Lisa CALKA, Plaintiff–Appellant,

v.

KUCKER KRAUS & BRUH, High Return Properties, S.A., High Return Properties, S.A., Inc., Fred Beguin and Renata Beguin, Defendants–Appellees.

Docket No. 98–9177

United States Court of Appeals, Second Circuit.

Argued Feb. 2, 1999.

Decided Feb. 11, 1999.

Edward S. Kanbar, New York, NY, for Plaintiff–Appellant Lisa Calka.

Saul D. Bruh, Kucker Kraus & Bruh, LLP, New York, NY, for Defendant–Appellee Kucker Kraus & Bruh.

Before: CABRANES and STRAUB, Circuit Judges, and McCURN, District Judge.*

* The Honorable Neal P. McCurn, of the United States District Court for the Northern District of

New York, sitting by designation.

Per Curiam:

■ Appellant Lisa Calka, who previously withdrew her appeal, brings a "Motion for Injunctive Relief for Post–Appeal Violation of Rules of this Court," based upon opposing counsel's disclosure, in a related state court proceeding, of a statement made by Calka's counsel during a pre-argument conference held pursuant to the Second Circuit's Civil Appeals Management Plan ("CAMP"). We write to emphasize that the CAMP confidentiality rule is violated where CAMP communications are disclosed to outside parties, regardless of whether such disclosures are made in a proceeding before this Court. Because counsel has undertaken to voluntarily withdraw the offending statement from the state court submission, however, we deny the motion for injunctive relief, primarily on mootness grounds. Although Calka's supporting papers also request attorney's fees and sanctions, we decline that invitation, not because CAMP violations fail to warrant sanctions, but rather because the totality of the circumstances militates against such penalties in this case.

Both the federal and state actions involve the efforts of appellee High Return Properties S.A., Inc. ("High Return"), represented by appellee Kucker, Kraus & Bruh, LLP ("KK & B"), to recover several years of unpaid rent from Calka. High Return filed suit against Calka in New York Supreme Court, New York County, and, in March 1998, obtained judgment in the amount of $70,221.00. During the month prior to the state court judgment, Calka had filed a complaint in the United States District Court for the Southern District of New York ·(Robert W. Sweet, *Judge*) against KK & B, High Return, and various individuals, alleging violations of the Fair Debt Collection Practices Act, 15 U.S.C. § 1692 *et seq.,* and related state law violations.

The defendants in the federal action moved for sanctions against Calka, and Calka cross-moved for sanctions. On July 29, 1998, the district court dismissed the action and denied both sanctions motions; Calka appealed the dismissal to this Court. Shortly after a pre-argument CAMP conference was conducted by Staff Counsel Frank Scardilli, counsel for the parties stipulated to withdrawal of the appeal; this Court entered its mandate certifying the stipulation on October 16, 1998.

On December 22, 1998, the New York state court found Calka to be in contempt of court based upon her failure to respond to subpoenas issued as part of an effort to enforce the earlier state judgment. After the state court refused to sign an Order to Show Cause filed by Calka in an apparent attempt to evade the state court judgment, High Return sought sanctions against Calka and her attorney, Edward S. Kanbar. That motion, which was filed by KK & B associate Andrew Bittens, stated:

> When I previously communicated with Mr. Kanbar in the course of this case and other related cases he informed me that Calka herself was ill and receiving treatment. At a later date he represented to me that she was in fact caring for her ailing mother. *Then on October 5, 1998 during a conference with Frank Scardilli, ... Kanbar again changed his client's story to state that Calka herself was in fact ill. When I pointed out to him and Mr. Scardilli the discrepancies in his statements and asked for his explanation he was silent.* Now, Calka shamelessly uses her father as an excuse.

Kanbar Aff. ¶ 4 (emphasis added).

Calka responded by filing the instant motion in this Court based upon the above-quoted disclosure of CAMP communications. As previously noted, Calka's motion is styled as a "Motion for Injunctive Relief," but it requests that Bittens be directed to withdraw the state court pleading and that Bittens be sanctioned and required to pay damages and attorney's fees. KK & B's opposition requests denial of Calka's motion as well as the imposition of sanctions upon Attorney Kanbar.

The CAMP confidentiality rule, as set forth in Appendix D to the Local Rules of this Court, provides:

> All matters discussed at a conference, including the views of Staff Counsel as to the merits, are confidential and not communicated to any member of the court. Likewise parties are prohibited from advising

members of the court or any unauthorized third parties of discussions or actions taken at the conference. *In re Lake Utopia Paper Limited,* 608 F.2d 928 (2d Cir.1979). Thus the court never knows what transpired at a conference.

In the cited case, this Court explained the purpose and importance of the confidentiality rule:

It is essential to the proper functioning of the Civil Appeals Management Plan that all matters discussed at these conferences remain confidential. The guarantee of confidentiality permits and encourages counsel to discuss matters in an uninhibited fashion often leading to "settlement, the simplification of the issues and (the resolution of) any other matters which the staff counsel determines may aid in the handling or the disposition of the proceeding." Civil Appeals Management Plan Rule (5)(a). If participants cannot rely on the confidential treatment of everything that transpires during these sessions then counsel of necessity will feel constrained to conduct themselves in a cautious, tight-lipped, non-committal manner more suitable to poker players in a high stakes game than to adversaries attempting to arrive at a just resolution of a civil dispute. This atmosphere if allowed to exist would surely destroy the effectiveness of a program which has led to settlements and withdrawals of some appeals and to the simplification of issues in other appeals, thereby expediting cases at a time when the judicial resources of this Court are sorely taxed.

*Lake Utopia,* 608 F.2d at 930.

■ Without question, the potential for disclosure of CAMP communications would have a chilling effect on CAMP conferences regardless of the nature of the communications that might be disclosed or the forum in which such disclosure might take place. Accordingly, we have no difficulty concluding that Bittens violated both the letter and the spirit of the CAMP confidentiality rule when he disclosed Kanbar's CAMP conference statements in a state court sanctions motion.

■ The question of a remedy is not as simple. Counsel for appellees, in what might be characterized charitably as artful dodging, has conceded that the disclosure by Bittens was "improvident." More importantly, counsel has undertaken, quite apart from this Court's resolution of the motion, to withdraw the offending statements from the state court submission. That action renders moot the primary relief sought by Calka—that is, an order from this Court requiring the offending party to do the same.

■ As noted above, Calka also has requested the imposition of sanctions, attorney's fees, and "damages." We intend to make clear that the disclosure at issue here "is highly improper and will not be condoned." *Lake Utopia,* 608 F.2d at 929. To be sure, such disclosures present a basis for the imposition of sanctions in the appropriate case. *See S.R. Mercantile Corp. v. Maloney,* 909 F.2d 79, 83–84 (2d Cir.1990). Under the totality of the circumstances presented here, however, including the apparent inexperience of the offending attorney, we conclude that this is not such a case.

For the reasons stated above, Calka's Motion for Injunctive Relief is denied.