**Meijuan WENG, Petitioner,**

v.

**John ASHCROFT, Attorney General, Respondent.**

**No. 04–1020.**

United States Court of Appeals, First Circuit.

Aug. 10, 2004.

William P. Joyce, Stephanie F. Dyson, and Joyce & Zerola, P.C., on brief, for petitioner.

Peter D. Keisler, Assistant Attorney General, Donald E. Keener, Deputy Director, and Francis W. Fraser, Senior Litigation Counsel, Office of Immigration Litigation, on brief, for respondent.

Before SELYA, Circuit Judge, COFFIN and CYR, Senior Circuit Judges.

PER CURIAM.

The petitioner, Meijuan Weng, is a citizen of the People's Republic of China. She challenges a final order of the Board of Immigration Appeals (BIA) denying her application for asylum, withholding of deportation, and protection under the Convention Against Torture (CAT). She argues that the Immigration Judge (IJ) erred in holding that her claims were unsupported by sufficient credible evidence. Discerning no error, we deny her petition for judicial review.

The travel of the case is straightforward. The petitioner paid $50,000 to be smuggled into the United States illegally

on June 8, 2000. Within a matter of months, the Immigration and Naturalization Service began removal proceedings against her. The petitioner conceded removability and applied for asylum, claiming that she had been persecuted in her homeland for violating family planning policies.

In her petition and her testimony at an evidentiary hearing before the IJ, the petitioner made the following allegations. Three months after she and her husband had their first child, local authorities forced her to submit to the implantation of an intrauterine device (IUD) in compliance with China's "one child" policy. Notwithstanding the presence of the IUD, the petitioner became pregnant in February of 1998. She later had the IUD removed and skipped a mandatory medical checkup meant to ensure that it remained in place. She and her husband hid at a relative's house in order to avoid government scrutiny. While in hiding, the authorities came to her in-laws' home (where the petitioner and her husband previously had resided) and threatened to impose a fine in the sum of 5,000 yuan. After the petitioner and her husband returned to her in-laws' abode, local officials lost little time in taking her into custody and forcing her to have an abortion.

The petitioner's husband fled to the United States in 1998, paying a $30,000 fee to a smuggler. More than a year later, the petitioner followed. She claims to have left China so that she could have additional children (a fact that seems somewhat at odds with the fact that she and her husband have seen each other only once since she arrived in the United States). She expressed fear that, if she returned to China, she would be persecuted, imprisoned, and fined. Moreover, she would be forced to submit to another abortion if she again became pregnant.

The IJ flatly rejected the petitioner's account. In the process, she found the petitioner's credibility compromised on several grounds, e.g., (i) inconsistencies in documents submitted as evidence; (ii) "incoherent" oral testimony; and (iii) the implications of the petitioner's assertion that she had paid $50,000 to a smuggler despite her professed inability to afford a fine of 5,000 yuan (roughly $600). The IJ concluded that the petitioner's story, like the documents she had submitted, was "concocted." Accordingly, she denied the application in all respects. The BIA summarily upheld the IJ's decision, and this petition for review ensued.

In this venue, the petitioner asserts that her testimony was credible and that the IJ's reasons for finding to the contrary were unfounded. In reviewing these assertions, we focus on the denial of the petitioner's claim for asylum. If the adverse credibility finding withstands scrutiny and the asylum claim fails, so must the petitioner's claim for withholding of deportation. *See Aguilar–Solis v. INS*, 168 F.3d 565, 569 n. 3 (1st Cir.1999). And although there is no per se rule that an adverse credibility determination on an asylum petition automatically defeats a claim for relief under CAT, it is obvious that, on the facts of this case, the credibility determination, if sustainable, will also defeat the petitioner's CAT claim. *See, e.g., El Moraghy v. Ashcroft*, 331 F.3d 195, 205 (1st Cir.2003). Here, moreover, we concentrate on the IJ's findings, which effectively have become the findings of the BIA. *See Laurent v. Ashcroft*, 359 F.3d 59, 64 n. 3 (1st Cir.2004); *Aguilar–Solis*, 168 F.3d at 570 n. 4.

Asylum claims are governed by the Immigration and Nationality Act, 8 U.S.C. §§ 1101–1537. To qualify for asylum, a petitioner bears the burden of demonstrating that she is a refugee. *See Aguilar–*

*Solis,* 168 F.3d at 569; *see also* 8 U.S.C. § 1158(b)(1); 8 C.F.R. § 208.13(a). A refugee is defined as a person who cannot or will not return to her home country "because of persecution or a well-founded fear of persecution on account of race, religion, nationality, membership in a particular social group, or political opinion." 8 U.S.C. § 1101(a)(42)(A). A 1996 amendment to the definition of "refugee" states that

> a person who has been forced to abort a pregnancy or to undergo involuntary sterilization, or who has been persecuted for failure or refusal to undergo such a procedure or for other resistance to a coercive population control program, shall be deemed to have been persecuted on account of political opinion, and a person who has a well founded fear that he or she will be forced to undergo such a procedure or subject to persecution for such failure, refusal, or resistance shall be deemed to have a well founded fear of persecution on account of political opinion.

*Id.* § 1101(a)(42)(B).

Were we to credit the petitioner's version of events, she probably would qualify as a refugee (and, thus, qualify for asylum). But the IJ found her testimony and proffers incredible and concluded that she had not carried her burden of demonstrating either past persecution or a well-founded fear of future persecution. To topple these findings, the petitioner faces a steep uphill climb. In the absence of a mistake of law—and we see none here—we must uphold the IJ's decision as long as it is "supported by reasonable, substantial, and probative evidence on the record considered as a whole." *Aguilar–Solis,* 168 F.3d at 569 (*quoting* former 8 U.S.C. § 1105a(a)(4)). We may reverse only if the evidence "not only *supports* that conclusion, but *compels* it." *INS v. Elias–Zacarias,* 502 U.S. 478, 481 n. 1, 112 S.Ct.

812, 117 L.Ed.2d 38 (1992) (emphasis in original) (codified at 8 U.S.C. § 1252(b)(4)(B)).

A special protocol has been developed for the review of adverse credibility findings in immigration cases. In performing that task, appellate courts defer broadly to the trier's findings, mindful that the IJ is in a far superior position to evaluate a witness's veracity (or lack thereof). *See Laurent,* 359 F.3d at 64; *Cordero–Trejo v. INS,* 40 F.3d 482, 491 (1st Cir.1994); *cf. Sierra Fria Corp. v. Donald J. Evans, P.C.,* 127 F.3d 175, 181–82 (1st Cir.1997) ("Credibility determinations fall squarely within the trier's preserve."). However, deferential review is not to be confused with no review at all. Thus, we look for "specific, cogent reason[s]" to justify a credibility call. *El Moraghy,* 331 F.3d at 205. In the last analysis, we will uphold an IJ's decision "as long as the findings on which it rests have sufficiently sturdy roots in the administrative record." *Aguilar–Solis,* 168 F.3d at 571.

In this case, the IJ grounded her adverse credibility finding on several subsidiary findings. The record supports each and all of these subsidiary findings. For example, she noted inconsistencies in the documents submitted by the petitioner, such as the fact that her marriage certificate bore a different state-issued identification number than her household registration document. Moreover, the latter document was issued *after* the petitioner had emigrated to the United States, raising an obvious question as to why the Chinese government would certify her place of abode at a time when she was no longer there. The IJ considered these inconsistencies in light of the widespread document fraud among asylum seekers from the petitioner's home region and the seeming pattern of falsehoods that emerged. *See* U.S. Dep't of State, China:

Profile of Asylum Claims and Country Conditions (April 14, 1998); *see also* 8 C.F.R. § 208.12 (enabling immigration officials to consider such reports in making asylum determinations). The adverse inferences that she drew from that evidence were supportable. *See Qin v. Ashcroft,* 360 F.3d 302, 307 (1st Cir.2004) (holding the Profile, considered in light of contradictory documentary evidence, sufficient to support a finding of fabrication).

To be sure, the petitioner offered explanations for these, and other, inconsistencies. Nevertheless, the IJ considered and rejected those explanations. The same case law that makes clear that the trier is entitled to rely upon inconsistencies in a petitioner's documentary proffers to fuel an adverse credibility determination also makes clear that the trier is not required blindly to accept the petitioner's self-serving explanations. *See, e.g., Lin v. Ashcroft,* 371 F.3d 18, 22 (1st Cir.2004); *Qin,* 360 F.3d at 308; *Mendes v. INS,* 197 F.3d 6, 13 (1st Cir.1999). This is especially true where, as here, the inconsistencies in the documents go to the heart of their authenticity or to the essence of the asylum claim. *See Yu v. Ashcroft,* 364 F.3d 700, 703–04 (6th Cir.2004); *Bojorques–Villanueva v. INS,* 194 F.3d 14, 16–17 (1st Cir.1999). Consequently, we hold that it was within the encincture of the IJ's discretion to consider these inconsistencies in making her adverse credibility determination.

So too the deficiencies that the IJ found in the petitioner's oral testimony. She described the petitioner as "almost incoherent" when discussing her child's household registration (the petitioner appears initially to have claimed that she could not

register the child until she had the IUD inserted, but later testified that the insertion followed the registration). The IJ also noted that the petitioner became very confused about the timing of her alleged abortion.[1] An independent review of the record confirms that the petitioner's awkward attempts to make sense out of a story that did not hang together cannot be lightly dismissed.

A third basis for the IJ's adverse credibility finding involves the high price that the petitioner paid to be smuggled into the United States. The IJ had difficulty believing that someone who complained so bitterly about a 5,000 yuan penalty could meet the $50,000 price tag set by the smugglers. The IJ also noted that this steep price, once paid, gave the petitioner a tremendous incentive to lie, if necessary, so as to remain in the United States. The petitioner attempts to debunk this reasoning as mere conjecture. *See Cordero–Trejo,* 40 F.3d at 487 (holding that no deference is due when findings are based on inferences not grounded in the record or "merely personal views of the immigration judge"). We regard it, however, as the drawing of a reasonable inference from the evidence at the IJ's disposal. *See Lin,* 371 F.3d at 20; *Qin,* 360 F.3d at 303–05. Moreover, the IJ bolstered that inference by referring to several cases involving illegal immigration from the Fujian region, in which a slew of petitioners presented strikingly similar stories involving relatively small fines and relatively high smuggling fees. While that might have been mere coincidence, the IJ was entitled to take a more cynical view. *Cf. United States v. Doyle,* 981 F.2d 591, 595 (1st Cir.1992) (observing that, in certain circumstances,

---

1. The petitioner seizes upon the fact that the IJ mentioned the possibility that her confused testimony may have been due to nervousness. This is whistling past the graveyard. Either outright mendacity or excessive nervousness could plausibly support an adverse credibility determination.

"[o]ne would have to believe in the Tooth Fairy to think [conduct] merely coincidental").

The bottom line is that the conflicting documents presented as evidence, the petitioner's wandering testimony, and the large sums of money she spent combined to provide substantial support for the IJ's adverse credibility determination.[2] Because this credibility determination undermined the totality of the petitioner's evidence, the IJ did not err in concluding that the petitioner failed to carry her burden of showing past persecution. *See Qin,* 360 F.3d at 308; *Laurent,* 359 F.3d at 65.

To be sure, a petitioner who cannot show past persecution still may qualify for asylum if she can show a well-founded fear of *future* persecution. To qualify, she must "not only harbor a genuine fear of future persecution, but also must establish an objectively reasonable basis for that fear." *Laurent,* 359 F.3d at 65. This brings us full circle: to meet the second prong of this standard, the petitioner must present *credible* evidence indicating that her fear of future persecution is reasonable. *See id.*

The evidence indispensable to the petitioner's fear of future persecution consists primarily of her own testimony. Thus, the IJ's supportable finding that the petitioner's testimony was concocted closes this door as well.

We need go no further. While the IJ was not compelled to conclude that the petitioner lacked credibility, the inconsistencies and other items we have noted entitled her to form such a conclusion. So viewed, the record contains substantial evidence to support the determination that the petitioner failed to satisfy her burden of showing either past persecution or a well-founded fear of future persecution. It follows that the IJ did not err in denying the petitioner's application for asylum and other relief.

***The BIA's summary affirmance is confirmed. Accordingly, the petition for review is denied.***

---

2. The petitioner claims that the IJ improperly considered two additional factors, namely, (i) that the petitioner's husband, a material witness, did not testify on her behalf, and (ii) that it would be difficult to conceive with an IUD in place. We need not address these allegations as it is quite clear from the record that the IJ used neither factor as a basis for her decision.