**Xiao Yan REN, Petitioner,**

v.

**Alberto R. GONZALES,\* Attorney General, Respondent.**

**No. 04–2008–AG.**

United States Court of Appeals, Second Circuit.

Jan. 24, 2006.

David Z. Su, El Monte, California, for Petitioner.

David E. O'Meilia, United States Attorney for the Northern District of Oklahoma (Loretta F. Radford, Assistant United States Attorney), Tulsa, Oklahoma, for Respondent, of counsel.

PRESENT: Hon. CHESTER J. STRAUB, Hon. ROSEMARY S. POOLER, and Hon. SONIA SOTOMAYOR, Circuit Judges.

---

\* Pursuant to Federal Rule of Appellate Procedure 43(c)(2), Attorney General Alberto R. Gonzales is automatically substituted for former Attorney General John Ashcroft as a respondent in this case.

34

## SUMMARY ORDER

UPON DUE CONSIDERATION of this petition for review of a decision of the Board of Immigration Appeals ("BIA"), it is hereby ORDERED, ADJUDGED, AND DECREED that the petition for review is GRANTED, the BIA's order is REVERSED in part and VACATED in part, and the case is REMANDED for further proceedings consistent with this order.

Xiao Yan Ren, through counsel, has filed a timely petition for review of a March 30, 2004 decision by the BIA affirming the October 2002 decision of an immigration judge ("IJ") denying her application for asylum and withholding of removal.[1] We assume the parties' familiarity with the facts, the procedural history, and the scope of the issues presented in the petition for review, which we reference only as necessary to explain our decision.

Where the BIA "adopts the decision of the IJ and merely supplements the IJ's decision ... we review the decision of the IJ as supplemented by the BIA." *Yan Chen v. Gonzales,* 417 F.3d 268, 271 (2d Cir.2005). We review factual findings under the substantial evidence standard, *see id.,* and must treat those findings as "conclusive unless any reasonable adjudicator would be compelled to conclude to the contrary," 8 U.S.C. § 1252(b)(4)(B). We afford particular deference to an IJ's credibility determinations, *see Zhou Yun Zhang v. INS,* 386 F.3d 66, 73–79 (2d Cir.2004), but the IJ must "give specific, cogent reasons for rejecting the petitioner's testimony, and we will reverse where the adverse credibility determination is based upon speculation or upon an incorrect analysis of the testimony." *Ramsa-*

*meachire v. Ashcroft,* 357 F.3d 169, 178 (2d Cir.2004) (internal quotation omitted).

In this case, the IJ asserted two main grounds for doubting the petitioners' veracity. First, the IJ found that the petitioner's account contradicted reports of current conditions issued by the U.S. State Department. Second, the IJ identified purported implausibilities and inconsistencies within the petitioner's testimony. We address these in turn.

First, the IJ relied on a 1998 Country Profile report submitted into evidence by the government. *See* U.S. Department of State, China: *Profile of Asylum Claims and Country Conditions* (Apr. 14, 1998) ("1998 Country Profile"). We note at the outset that this report was not necessarily the most probative, given that the events alleged in the petition occurred from 1999 to 2000 and that the asylum hearing occurred in 2002. More importantly, however, the IJ overstated the extent to which the petitioner's account was necessarily contradicted by, or inconsistent with, the 1998 Country Profile.

The IJ focused on the petitioner's statements that her IUD was forcibly implanted after her first birth of a female child and that she was never fined for her unapproved pregnancy. The IJ found the petitioner's account contradicted by statements in the 1998 Country Profile that IUD's are generally implanted only when a couple already has more than one child and that fines are typically assessed for unapproved pregnancies. The 1998 Country Profile, however, repeatedly states that China's family planning policy, including the imposition of fines, is unevenly implemented. Moreover, the Country Profile

---

1. In the proceedings below, Ren also requested relief pursuant to Article 3 of the Convention Against Torture ("CAT"), Dec. 10, 1984, S. Treaty Doc. No. 100–20 (1988), 1465 U.N.T.S. 85; 8 C.F.R. § 208.16. CAT relief was denied by the IJ and the BIA. Because we are remanding, and because Ren has not presented any factual or legal arguments in her appellate brief as to why she is entitled to CAT relief, we do not address that claim.

indicates that the policy "affects most heavily Han Chinese in urban areas, where a one-child policy is more vigorously implemented and adhered to." The petitioner is identified as Han Chinese in her Household Registry, and although the IJ did not inquire into whether the petitioner lived in an urban or rural area, the Household Registry also provides grounds for inferring that the petitioner lived in an urban area.

In addition, the IJ focused on a statement in the Country Profile that U.S. observers, on visits to Fujian Province, "did not find any cases of physical force actually employed in connection with an abortion or sterilization." But the Country Profile also states that "[p]oor supervision of local officials who are under intense pressure to meet family planning targets sometimes results in abuse such as forced abortion and sterilization," and it indicates that in 1996 "there were credible reports that several women were forced to undergo abortion in Fujian." Moreover, the petitioner submitted as an exhibit a transcript of an ABC *Nightline* report, dated June 9, 1998, which involved an interview with a former Chinese family-planning official. The official spoke about a "well organized system of force[d] sterilizations and abortions" and also specifically described the same abortion procedure that the petitioner alleges was used on her. Finally, the petitioner offered into evidence a more recent 2001 Country Report, which was not cited by the IJ or the BIA on this issue. This

2001 Country Report notes that "[t]he Government continued to implement its sometimes coercive policy to restrict the number of children a family may have," and that "[v]iolence against women (including imposition of a sometimes coercive birth control policy, including instances of forced abortion and forced sterilization) . . . are all problems."[2]

Overall, we do not find that the 1998 Country Profile so contradicts the petitioner's account so as to render her incredible. *See Tian–Yong Chen v. U.S. I.N.S.*, 359 F.3d 121, 130 (2d Cir.2004) (questioning reliance on outdated country-conditions report's qualified description of *general* practices and noting that such "observations do not automatically discredit contrary evidence presented by the applicant"). Moreover, the IJ failed to consider or account for other background material that supported her testimony. *See Yan Chen*, 417 F.3d at 272–75 (emphasizing, with respect to background evidence of country conditions, that immigration court must consider all evidence before it and that we will vacate if it fails to do so); *see also Tian–Yong Chen*, 359 F.3d at 130 (stating that, while IJ may consider country conditions report as evidence, "it is obligated to consider also any contrary or countervailing evidence with which it is presented").[3]

Beyond the purported conflicts with the 1998 Country Profile, the IJ identified certain aspects of the petitioner's testimony

---

2. A copy of the 2001 Country Report on Human Rights Practices, released March 4, 2002, was included in the administrative record but is missing several relevant pages, including the pages containing the quoted text. We take judicial notice of the 2001 Country Report, as the IJ admitted a copy into evidence, it is readily accessible, and its contents are not subject to reasonable dispute. *See, e.g., Latifi v. Gonzales*, 430 F.3d 103, 106 n. 1 (2d Cir.2005) (per curiam).

3. The IJ and BIA also used the 1998 Country Profile to cast doubt on the authenticity of the abortion certificate submitted by the petitioner as documentary evidence of her past persecution. While the Country Profile may diminish the weight afforded to the certificate, it is insufficient to reject the evidence outright, or to find the petitioner generally not credible, where the IJ conducted no other inquiry into the authenticity of this specific certificate.

as being implausible or inconsistent. Most important was the IJ's finding about the petitioner's testimony on how Chinese authorities discovered her while she was pregnant and in hiding. The IJ summarized the petitioner as claiming that "someone from her village probably spotted her," and that the person may have done it for money, but "that she did not know who reported her pregnancy." This is an accurate summary of her asylum hearing testimony, where she stated that "I was suspecting that people from my area reported to [the family planning officials]," and that "[t]hose people, they reported, maybe they will get compensation for it." But the IJ then characterized this testimony as inconsistent with her December 2000 statement to an immigration official, "wherein," according to the IJ, "she states that it was her neighbor that reported her to the police."

Insofar as the IJ construed the petitioner's prior statement as identifying a specific person who reported her, that interpretation of the prior statement was clearly incorrect. In her December 2000 interview (according to notes taken by an immigration official), the petitioner stated that "the neighbor's [*sic*] saw that I was pregnant and they informed the officials." She further indicated that she thought neighbors had reported her because "I heard the neighbors taking about it." The interviewing official summarized the statement as: "Applicant believes that neighbors informed the officials." The petitioner's testimony at the asylum hearing that she "was suspecting that people from [her] area reported" her was wholly consistent with her stated belief in her 2000 interview that unspecified "neighbors" had reported

her. Because the IJ made an adverse credibility determination based, in large part, on this "incorrect analysis of the testimony," we are not required to accept the adverse credibility finding. *Ramsameachire*, 357 F.3d at 178.

Nor do other purported inconsistencies or implausibilities support the denial of asylum. The IJ found implausible the petitioner's description of a 1999 gynecological examination. But the IJ's conclusion in this regard—that it was implausible that the doctor would have only tested the petitioner for pregnancy and would not have performed a fuller examination—is pure speculation. *See Jin Chen v. U.S. Dep't of Justice*, 426 F.3d 104, 115 (2d Cir.2005) (rejecting factual finding based "solely on speculation and conjecture"). In any event, the IJ himself admitted that this perceived implausibility was only a minor point. The IJ further found that the petitioner failed to give an adequate response as to whether her husband had also gone into hiding. Whether her husband was in hiding, however, was at most peripheral to her claim.

Finally, the BIA pointed out that the identification number on the petitioners' identification card and household registry was different from the identification number on her marriage certificate and family planning certificate. This issue was raised for the first time by the BIA, which never gave the petitioner an opportunity to explain the discrepancy and which appears to assume, without any support in the record, that the discrepancy is attributable to fraud or counterfeit.[4] In any event, the petitioner on appeal has provided a persuasive explanation for the discrepancy— that she was issued a new identification

---

4. It is also not clear that the BIA's finding, if intended to serve as an independent basis for the adverse credibility determination, would constitute impermissible factfinding. *See* 8

C.F.R. § 1003.1(d)(3)(iv) ("[T]he Board will not engage in factfinding in the course of deciding appeals.")

card with a new number in 2000—and the government has not offered any reason to doubt this explanation.[5]

More generally, we feel compelled to note that, in reaching the adverse credibility finding, the IJ never discussed the most important aspect of the petitioner's testimony: her description of how the abortion was performed on her. At least on the record, the petitioner's testimony appears relatively detailed and consistent with the background material. Standing alone, the failure to discuss this crucial testimony might not require vacating the denial of relief, but we remind the IJ and BIA that "the asylum application process requires a good-faith *inquiry* into whether an applicant is entitled to this country's protection, and should never resemble a search for a justification to deport." *Poradisova v. Gonzales*, 420 F.3d 70, 82 (2d Cir.2005) (internal quotation omitted).

In light of the above, we must now determine the appropriate remedy. We recognize that to reverse, we must find "that the evidence not only supports [a] conclusion" favorable to the asylum applicant, "but compels it." *INS v. Elias–Zacarias*, 502 U.S. 478, 481 n. 1, 112 S.Ct. 812, 117 L.Ed.2d 38 (1992). Asylum determinations are statutorily entrusted to the BIA and IJs; accordingly, the appropriate remedy will be remand " 'for additional

investigation or explanation ... except in rare circumstances.' " *Jin Chen*, 426 F.3d at 117 (quoting *INS v. Ventura*, 537 U.S. 12, 16, 123 S.Ct. 353, 154 L.Ed.2d 272 (2002) (per curiam)); *see also Cao He Lin v. U.S. Dep't of Justice*, 428 F.3d 391, 395 & n. 1 (2d Cir.2005). In this case, however, each of the reasons for finding the petitioner not credible were flawed, and the record reflects no valid grounds for doubting the petitioner's credibility in light of her detailed and consistent testimony, which was supported by background material and documentary evidence. We therefore reverse the adverse credibility determination and find that the petitioner has established past persecution. Because the petitioner's claim for withholding of removal was denied solely because the IJ found that she failed to establish eligibility for asylum, we also vacate the denial of the withholding of removal. The case is to be remanded to the BIA for further proceedings consistent with this decision.

For the foregoing reasons, the petition for review is GRANTED, the decision of the BIA is REVERSED in part and VACATED in part, and the case is REMANDED to the BIA.

---

5. In providing this explanation in the appellate brief, the petitioner's attorney, David Z. Su, Esq., attached a letter addressed to the government that was apparently prompted by discussions between Mr. Su and the government during an April 2005 pre-argument conference held pursuant to this Court's Civil Appeals Management Plan ("CAMP"). The letter indicates that it would be included in the brief at the instruction of Mr. John Palmer, Associate Staff Counsel of the Court, and with the consent of the government. Nonetheless, we must remind Mr. Su that, as set forth in Appendix D to the Local Rules of this Court, all matters discussed at a CAMP conference are confidential and should not be

communicated to any member of the Court. *See Calka v. Kucker Kraus & Bruh*, 167 F.3d 144, 145–46 (2d Cir.1999) (per curiam) (stressing importance of preserving confidentiality).

Because the substance of letter does not rely on statements made or information obtained during the CAMP conference, we do not feel that we must disregard the petitioner's explanation for why the ID numbers are different. Mr. Su, however, should have simply provided the explanation directly rather than appending a letter that touches on CAMP conference discussions subject to confidentiality restrictions.