Zheng Jian CHEN, Petitioner,

v.

**BOARD OF IMMIGRATION APPEALS, Respondent.**

**Docket No. 03–40369–AG.**

United States Court of Appeals, Second Circuit.

Argued: June 9, 2006.

Decided: July 20, 2006.

See also 2006 WL 2091201.

James E. Moore (Gary J. Yerman, on the brief), New York, NY, for Petitioner.

Barbara D. Sale, Assistant United States Attorney (Allen F. Loucks, United States Attorney for the District of Maryland, on the brief), Baltimore, MD, for Respondent.

Before STRAUB, SOTOMAYOR, and HALL, Circuit Judges.

SOTOMAYOR, Circuit Judge.

Zheng Jian Chen (A 78 751 277), a citizen of China, petitions for review of a final order of the Board of Immigration Appeals ("BIA") affirming a decision by Immigration Judge Roxanne C. Hladylowycz ("the IJ"), which denied Chen's application for asylum, withholding of removal, and relief under the Convention Against Torture ("CAT"). In a concurrently filed summary order, we hold that the IJ's adverse credibility determination is not supported by substantial evidence and remand the case to the BIA for further proceedings.

We publish this brief opinion because one of the issues in this case may also arise in a significant number of other cases and requires further investigation by the agency. Specifically, an apparent discrepancy between the identification numbers listed on certain of Chen's official documents may be susceptible of an innocent explanation. From this discrepancy, the IJ concluded, without explanation, that Chen's documents were "suspect" and failed to explore the possibility that administrative changes in China may explain it. As discussed below, the IJ's conclusions concerning the discrepancy are not supported by substantial evidence. Therefore, and for the reasons stated in our concurrently filed summary order, we grant the petition for review, vacate the BIA's order, and remand.

## BACKGROUND

Because this published opinion addresses only one of the issues presented by Chen's petition for review, we set forth only the facts that relate to that issue. One of the bases for the IJ's adverse credibility determination appears to be her findings that there were discrepancies in the personal identification numbers in the documents Chen submitted with his asylum application and that the documents therefore are "suspect." There is indeed a discrepancy. Chen's national identification card and marriage certificates list differing personal identification numbers. Chen's identification number is listed as 350126196711240358 on his identification card, which was issued in 2001, and as

350126671124035 on his marriage certificate, which was issued in 1993.[1] There are thus two differences between the two documents. First, the ID card contains the additional digits "1" and "9" before the digits "6" and "7"; these four digits are, together, the same as Chen's birth year, 1967.[2] The marriage certificate, in contrast, contains only the digits "6" and "7." Second, the identification card has an additional number, 8, at the end.

During the removal hearing, Chen's attorney pointed out the correspondence between the added digits and Chen's birth year, and argued that the additional digits were "added in in [sic] compliance with the Y2K problem," i.e., anticipated computer problems arising from the transition between the years 1999 and 2000. Chen himself appeared unaware of the inconsistency and was unable to explain it. At one point, apparently without the documents in front of him, Chen stated that the numbers "are local zip code number[s]."

The IJ never addressed the argument that the changes in numbering corresponded to Chen's birth year and were caused by the Y2K problem, or the possibility that there might be other circumstances in which a renumbering would occur. Instead, her opinion simply noted that Chen's "national ID card has a different series of numbers than his marriage certificate and his household registration booklet," and stated that Chen's "explanation that these are zip code numbers makes no sense since both live alleged [sic] at the same address, yet have different numbers."[3] The BIA affirmed the decision without opinion, and Chen timely filed this petition for review.

## DISCUSSION

■ Where, as here, the BIA adopts the IJ's decision without opinion, we review the IJ's decision directly and uphold the IJ's adverse credibility determination if it is supported by "reasonable, substantial, and probative evidence in the record when considered as a whole." *Secaida–Rosales v. INS*, 331 F.3d 297, 307 (2d Cir.2003) (internal quotation marks omitted).

It would be reasonable for an IJ to assume that personal identification numbers generally stay the same throughout a person's life; after all, the purpose of an identification number is to allow a person to be identified. But in any country, there may be circumstances in which personal

1. The IJ also stated that differing identification numbers appeared in Chen's household registration booklet, but the record before us contains no such booklet with an entry for Chen. The registration booklet in which Chen's wife, Gao Feng, appears lists only her, her brother, and Chen and Gao Feng's child. The record also contains a household registration booklet for Chen's parents and sister, but not a registration booklet containing Chen himself. The "Notice of Proposed Evidence" submitted by Chen's attorney lists no other registration booklet, so it appears that the IJ either mistakenly believed Chen's parents' registration booklet to be Chen's own, or referred to evidence not in the certified administrative record.

2. We note also that the string of digits "19671124" in Chen's identification number

seems to match Chen's birthday as it is listed on his identification card and marriage certificate: 11/24/1967. Other identification numbers in the record follow a similar pattern. For example, the identification number for Gao Feng, Chen's wife, contains the digits "700210," and her date of birth is listed as 2/10/70.

3. Chen's explanation is implausible if he is understood to be saying that the entire eighteen-digit identification number is a "local zip code number." We note, however, that Chen's and Gao Feng's identification numbers share the first six digits (350126), as do the identification numbers of most of the members of their families that appear in the record. This commonality suggests that these six digits could indeed reflect the locality in which they were born.

identification numbers change. A discrepancy could indicate fraud, but it might also be caused by administrative changes or a simple bureaucratic mistake. The question presented here is what the discrepancy in Chen's documents signifies.

■ We cannot say that substantial evidence supports the IJ's implicit conclusion that fraud explains the discrepancy. *See Ramsameachire v. Ashcroft*, 357 F.3d 169, 178 (2d Cir.2004) (noting that the agency must identify "specific, cogent reasons" supporting its findings) (internal quotation marks omitted). The IJ apparently found it more likely that a forger would confuse the identification numbers than that Chinese authorities would change those numbers for bureaucratic reasons. We find this assumption speculative. *See Secaida–Rosales*, 331 F.3d at 307. It is somewhat difficult to imagine a forger correctly copying Chen's identification number from one document to another but adding three digits, two of which correspond to Chen's birth year, for no discernible reason.

Moreover, the IJ did not explore the possibility that legitimate administrative changes explain the discrepancy. There is no evidence in the record concerning the system by which identification numbers are assigned, what the numbers' component parts might represent, or whether the Chinese government has made changes to identification numbers in the past. *Cf. Cao He Lin v. U.S. Dep't of Justice*, 428 F.3d 391, 405 (2d Cir.2005) (holding that "absent record evidence of [documentation and record-keeping] practices in foreign countries, the IJ must not speculate as to

the existence or nature of such practices"). Indeed, in this case a specific explanation for the discrepancy was offered by Chen's attorney, but the IJ failed to investigate it.

Chen's Y2K-related explanation for the discrepancy in identification numbers was plausible on its face and consistent with the documents he submitted. Chen's marriage certificate predates the year 2000, and his national identification card, which contains the extra three digits, was issued in 2001. The later number appears to replace "67" with "1967," which would make it possible to distinguish between the years 1967 and 2067. We also note that Chen's wife's documents (contrary to the IJ's finding) contain no such discrepancy in identification numbers.[4] Chen's wife's documents all predated the year–2000 transition.

■ Although an IJ need not "expressly parse or refute on the record each and every one of a petitioner's purported explanations for testimonial inconsistencies or evidentiary gaps," *Xiao Ji Chen v. U.S. Dep't of Justice*, 434 F.3d 144, 159 n. 13 (2d Cir.2006), "where it is not apparent on the face of the record that the IJ has considered the applicant's responses to the IJ's credibility concerns, we do require the IJ to say enough to allow us to understand, and to review, the reasons for rejecting the applicant's testimony," *Pavlova v. INS*, 441 F.3d 82, 89–90 (2d Cir.2006). The IJ in this case never discussed the Y2K-related explanation suggested by Chen's attorney.[5] Even if the IJ's findings had not been speculative, her failure to

---

**4.** The IJ stated that the identification numbers for Chen's wife were different on the marriage certificate and in the household registration booklet. This appears to be incorrect; the identification number for Gao Feng, Chen's wife, was listed as 350126700210032 on both her identification card, which was issued in 1998, and on the marriage certificate, which was issued in 1993. The IJ's

finding that Chen's documents were "suspect" was thus in error insofar as it concerned Chen's wife's identification number.

**5.** We do not consider it significant, for the present analysis, that Chen's attorney, rather than Chen himself, offered the Y2K explanation.

assess the proffered explanation would make her finding unsustainable.

We note that this is not the first time we have seen this particular discrepancy in Chinese personal identification numbers. In a recent unpublished opinion,[6] we held that the BIA and the IJ erred in overlooking a petitioner's argument that a virtually identical alteration in identification numbers had been caused by China's efforts to protect its identification system from problems stemming from the Y2K transition. *See De Hua Liu v. U.S. Citizenship and Immigration Serv.*, 165 Fed.Appx. 119 (2d Cir.2006). A review of the briefs in the *De Hua Liu* case makes clear that the putative numerical inconsistency there was identical to ours; the number "19" had been added before the first two digits of the petitioner's birth year, and an extra digit had been added at the end of the number. The petitioner in *De Hua Liu* argued, as did Chen's attorney, that the Chinese government had changed resident identification numbers from 15 to 18 digits to avoid Y2K difficulties, adding "19" before the first two digits of the birth year and an extra digit at the end of the number.

The same discrepancy in identification numbers also appeared in another recent case, *Xiao Yan Ren v. Gonzales*, No. 04-2008-ag, 164 Fed.Appx. 33 (2d Cir.2006), in which the BIA "pointed out that the identification number on the petitioners' [sic] identification card and household registry was different from the identification number on her marriage certificate and family planning certificate." *Id* at 36. We criticized the BIA for "appear[ing] to assume, without any support in the record, that the discrepancy is attributable to fraud or counterfeit," *id.*, and held that the petitioner's "explanation for the discrepan-cy—that she was issued a new identification card with a new number in 2000"—was "persuasive," *id.* at 36–37.

*De Hua Liu, Xiao Yan Ren* and the present case may be only the tip of the iceberg. If the Chinese government has in fact made Y2K-related changes in its identification-numbering system, we would expect the resulting discrepancy to be evident in a significant number of asylum cases. Indeed, post–2000 cases involving apparent discrepancies between Chinese asylum seekers' personal identification numbers are relatively common. *See, e.g., Li Yong Cao v. U.S. Dep't of Justice*, 421 F.3d 149, 153 (2d Cir.2005) (noting that an IJ had questioned the authenticity of the petitioner's documents because of "the discrepancy between Cao's ID number as listed on the register as opposed to the other documents," but remanding without reaching the merits of this question); *Meijuan Weng v. Ashcroft*, 104 Fed.Appx. 194, 196 (1st Cir.2004) (upholding an IJ's adverse credibility finding based on "inconsistencies in the documents submitted by the petitioner, such as the fact that her marriage certificate bore a different state-issued identification number than her household registration document").

Because this issue has a potential impact on so many cases, we hope that the BIA will ensure that a thorough inquiry is undertaken into whether the Chinese government has made administrative changes to its national-identification-numbering system. We note that the Department of Homeland Security attorneys who serve as trial counsel in asylum cases share the responsibility to investigate factual questions of this kind, and hope that they too will make efforts to investigate in future cases the cause of documentary inconsis-

---

**6.** This Court's rules generally prohibit citation of summary orders. *See* 2d Cir. R. § 0.23. In this opinion, we cite such orders not for their precedential value, but only to make clear that the factual issue in this case has arisen before.

tencies. *See In re S–M–J–*, 21 I. & N. Dec. 722, 723 (BIA 1997) ("Because this Board, the Immigration Judges, and the Immigration and Naturalization Service are all bound to uphold this law, we all bear the responsibility of ensuring that refugee protection is provided where such protection is warranted by the circumstances of an asylum applicant's claim."). Absent such an inquiry, we will be unable to sustain findings based on discrepancies in Chinese identification numbers. If China has in fact made changes to its numbering system, we assume the BIA will ensure that IJs are made aware of that fact and that IJ decisions concerning Chinese documents take account of it.

## CONCLUSION

For the foregoing reasons and those stated in our concurrently filed summary order, the petition for review is GRANTED, the BIA's order is VACATED, and the case is REMANDED to the BIA for further proceedings consistent with this opinion.