**Yan CHEN, Petitioner,**

v.

**Alberto GONZALES, Attorney General,[1] Respondent.**

**Docket No. 04–0591–AG.**

United States Court of Appeals, Second Circuit.

Argued: May 31, 2005.

Decided: Aug. 2, 2005.

---

**1.** United States Attorney General Alberto Gonzales is substituted as Respondent. *See* Fed. R.App. P. 43(c)(2).

Thomas V. Massucci, New York, NY, for Petitioner.

Sara Winslow, Assistant United States Attorney for the Northern District of California (Joann M. Swanson, Chief, Civil Division; Kevin V. Ryan, United States Attorney, on the brief), San Francisco, CA, for Respondent.

Before: McLAUGHLIN, STRAUB, and HALL, Circuit Judges.

STRAUB, Circuit Judge.

Petitioner Yan Chen requests review of the January 29, 2004, decision of the Board of Immigration Appeals ("BIA" or "Board") dismissing his appeal of an August 2, 2002, decision of the Immigration Judge denying his application for asylum, withholding of removal, and protection under Article 3 of the United Nations Convention Against Torture ("CAT"). Because the Board failed to consider important evidence supporting Chen's petition, namely, a country condition report corroborating Chen's claims, we grant the petition for review, vacate the decision of the Board, and remand the case to the Board for further proceedings consistent with this opinion.

## BACKGROUND

In his asylum application, Yan Chen ("Chen"), a native and citizen of the People's Republic of China, alleges that he has been practicing Christianity throughout his life and that, prior to his departure from China in May 2001, he suffered various abuses by the Chinese government on account of his religion. At the hearing on his application, Chen testified that government officials came to his church on August 23, 2000, and warned members "to dismiss and leave the area." According to Chen's testimony, the officials then destroyed Christian song books and Bibles and, ultimately, destroyed the church. They also warned members "not to have this type of gatherings [sic] in the future" and indicated that the church members "should go to only those [gatherings] that are designated by the government." Chen claims that after this incident, church members congregated at members' houses. Chen testified that on January 18, 2001, while he was handing out flyers containing religious messages in a public area, a church member informed him that the gov-

ernment had discovered the church's alternative meeting places. Chen later learned that some church members and the church's preacher had been arrested. Chen also testified that he learned that his name is on the Chinese government's list of those who have handed out verboten religious flyers. Finally, Chen testified that some time after January 18, 2001, government officials came to Chen's house looking for him. Chen subsequently fled China, entered the United States, and applied for asylum, withholding of removal, and protection under the CAT.

On August 2, 2002, Immigration Judge Robert D. Weisel ("IJ") denied Chen's petition. The IJ found that Chen was not credible and that photographs he submitted in support of his application did not support his testimony. In light of these findings, the IJ rejected Chen's claims of past persecution and fear of future persecution. The IJ also found, in the alternative, that, even assuming Chen was credible, the conduct to which he testified did not rise to the level of persecution and did not establish a well-founded fear of future persecution.

Chen appealed the IJ's decision to the BIA and, on January 29, 2004, the BIA dismissed Chen's appeal in a *per curiam* opinion. The BIA held: "Even assuming that [Chen] is credible, we agree with the Immigration Judge that [he] has not met his burden of showing that he was persecuted in the past or has a well-founded fear of future persecution." The BIA recited Chen's testimony that he had never been arrested or detained because of his religion, that the Chinese government had his name on a list of people who had been handing out religious flyers, that officials from the "Public Security Bureau" looked for him at his home, but did not find him, that he was not arrested or detained between when the officials came looking for him and when he fled China, and held that, "[b]ased on the foregoing, we find that the respondent has not met his burden of showing that he was persecuted in the past or has a well-founded fear of future persecution on account of his religion." The BIA found further that Chen also necessarily failed to establish eligibility for withholding of removal.[2]

Chen now appeals, arguing that the BIA erred in concluding that he failed to establish a well-founded fear of future persecution.[3] Chen argues that the BIA failed to consider the country condition report he submitted in support of his claim, and that his testimony, which the BIA assumed to be credible, together with the country condition report compel the conclusion that he possesses a well-founded fear of future persecution.

## DISCUSSION

 To establish eligibility for asylum, a petitioner must show that he has suffered past persecution on account of race, religion, nationality, membership in a particular social group, or political opinion, or has a well-founded fear of future persecution on account of one of these grounds. *See* 8 U.S.C. § 1101(a)(42); *Wu Biao Chen v. INS*, 344 F.3d 272, 275 (2d Cir.2003) (per curiam). "An alien's fear may be well-founded even if there is only a slight, though discernible, chance of persecution." *Diallo v. INS*, 232 F.3d 279, 284 (2d Cir. 2000). "Once an applicant establishes eligibility for asylum, however, the decision whether to grant a particular application is ... within the discretion of the Attorney General." *Id.* (internal quotation marks

---

2. Chen did not appeal the IJ's rejection of his CAT claim to the BIA.

3. Chen does not appeal the BIA's decision as to past persecution.

omitted). To establish entitlement to withholding of removal, a mandatory form of relief, an applicant must satisfy the higher burden of demonstrating that it is more likely than not that his life or freedom would be threatened on account of one of the five bases for asylum if he is deported. *See* 8 U.S.C. § 1231(b)(3); *Diallo,* 232 F.3d at 284–85.

We review the factual findings of the immigration court for "substantial evidence." *See Islami v. Gonzales,* 412 F.3d 391, 396 (2d Cir.2005). Under this standard, the immigration court's factual findings will be upheld if supported by "reasonable, substantial and probative evidence in the record." *Id.* "Substantial evidence" is "more than a mere scintilla" and "means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Alvarado–Carillo v. INS,* 251 F.3d 44, 49 (2d Cir.2001) (internal quotation marks omitted). Questions of law regarding " 'what evidence will suffice to carry any asylum applicant's burden of proof' " are reviewed *de novo. See Islami,* 412 F.3d at 396 (quoting *Qiu v. Ashcroft,* 329 F.3d 140, 146 n. 2 (2d Cir.2003)). "[I]f the IJ or BIA were to use an 'inappropriately stringent standard when evaluating an applicant's testimony,' we would treat that as a legal, rather than factual error." *Id.* (quoting *Secaida–Rosales v. INS,* 331 F.3d 297, 307 (2d Cir.2003)).

When the BIA issues an opinion, "the opinion becomes the basis for judicial review of the decision of which the alien is complaining." *Niam v. Ashcroft,* 354 F.3d 652, 655 (7th Cir.2004) (citing *INS v. Ventura,* 537 U.S. 12, 15, 123 S.Ct. 353, 154 L.Ed.2d 272 (2002) (per curiam)). Where the BIA adopts the decision of the IJ and merely supplements the IJ's decision, however, we review the decision of the IJ as supplemented by the BIA. *Id.* at 655–66; *see also Secaida–Rosales,* 331 F.3d at 305

(holding that we review the decision of the IJ directly where the BIA "summarily affirm[s]" and "adopt[s]" an IJ's decision); *Kayembe v. Ashcroft,* 334 F.3d 231, 234 (3d Cir.2003) (holding that "only if the BIA expressly adopts or defers to a finding of the IJ, will we review the decision of the IJ"). Here, the BIA did not adopt the decision of the IJ to any extent, nor is the BIA's *per curiam* opinion merely supplemental. Moreover, the BIA indicated explicitly that it was deciding the case on the assumption, contrary to the IJ's finding, that Chen's testimony was credible. Accordingly, we review the decision of the BIA. *See Yahong Zheng v. Gonzales,* 409 F.3d 804, 809 (7th Cir.2005) (reviewing decision of the BIA in similar circumstances). In this posture, we may not rest our holding on the IJ's credibility findings, because the BIA did not affirm and adopt those findings. *See Jin Yu Lin v. DOJ,* 413 F.3d 188, 191 n.4 (2d Cir.2005) ("Because the BIA did not affirm [the IJ's alternative holding that the petitioner was ineligible for asylum], however, and instead relied on the IJ's adverse credibility determination, th[e former] aspect of the IJ's decision does not constitute grounds for vacatur or reversal."); *Kayembe,* 334 F.3d at 235 (holding that where the BIA did not adopt or defer to the IJ's finding on credibility, we "must proceed as if [the petitioner's] testimony were credible and determine whether the BIA's decision is supported by substantial evidence in the face of his assumed (but not determined) credibility"); *Gonzalez v. INS,* 77 F.3d 1015, 1023 (7th Cir.1996) ("Since the BIA did not adopt any of the immigration judge's reasoning in this case, [the petitioner's] challenge to his assessment of her credibility is irrelevant to our review of the BIA decision and barred on appeal."). In reviewing the decision of the BIA, we assume, but do not determine, Chen's credi-

bility as to his testimony concerning the events of his past and as to his subjective fear of future persecution.

 We find significant error in the BIA's failure to consider the country condition report submitted by Chen, which corroborates his testimony concerning his subjective fear of future persecution based on his religion, which we assume to be credible. The BIA, when considering an appeal, "must actually consider the evidence and argument that a party presents." *Abdulai v. Ashcroft,* 239 F.3d 542, 549 (3d Cir.2001) (internal quotation marks omitted); *see also Mohideen v. Gonzales,* 416 F.3d 567, 571, 2005 WL 1691597, at *4 (7th Cir. July 21, 2005) ("Although the BIA may have some reason for discounting the ... record evidence, it is not sufficient simply to ignore it when announcing a conclusion.... [The petitioner] is entitled to a reasoned analysis that engages the evidence he presented ...." (internal citations omitted)). We have previously granted petitions for review, vacated decisions of the BIA, and remanded where the IJ or BIA failed to consider relevant evidence. *See, e.g., Tian–Yong Chen v. INS,* 359 F.3d 121, 128–29 (2d Cir.2004) (remanding where IJ and BIA failed to consider a "significant aspect" of the petitioner's testimony); *Alvarado–Carillo,* 251 F.3d at 50.

In *Tian–Yong Chen,* we found that the IJ overlooked the petitioner's testimony that he had been beaten and that the BIA "perpetuated and compounded that flaw by not only ignoring the testimony but also flatly asserting that no such testimony existed in the record." 359 F.3d at 128. Recognizing that physical harm inflicted on an applicant on account of his religious beliefs is a circumstance relevant to establishing past persecution, we found that the decisions of the IJ and BIA were "fatally flawed" for their failure to consid-

er the petitioner's testimony and held that vacatur was necessary because "we [we]re unable adequately to consider whether substantial evidence supports the BIA's determination that [Tian–Yong] Chen failed to establish either past persecution or a well-founded fear of future persecution." *Id.* at 128. We therefore granted the petition for review, vacated the decision of the BIA, and remanded to the BIA with instructions to remand to the IJ. *Id.* at 129.

In *Alvarado–Carillo,* 251 F.3d at 50–51, 56, we granted a petition for review, vacated the BIA's decision, and remanded where the BIA's conclusion that "petitioner was claiming to have been persecuted based solely on his 'brief and minimal' union activity in 1984," was erroneous insofar as the BIA overlooked the petitioner's evidence that he was also persecuted for engaging in other activities at other times. We noted that these events were described by the petitioner in his testimony and in the documentary evidence. *Id.* at 50–51. In light of, *inter alia,* the BIA's failure to consider this relevant evidence in arriving at its conclusions, we remanded for the BIA to reevaluate the petitioner's claim. *Id.*

Other circuits have similarly vacated and remanded decisions of the BIA where the BIA overlooked or failed to properly consider relevant evidence. *See Georgis v. Ashcroft,* 328 F.3d 962, 968–69 (7th Cir. 2003) (finding error in BIA's conclusion that the petitioner did not submit corroborative or supporting evidence and remanding in part on that basis); *Palavra v. INS,* 287 F.3d 690, 692 (8th Cir.2002) (vacating and remanding on the basis that "significant parts of the record were not considered" by the BIA); *Hernandez v. Reno,* 258 F.3d 806, 814 (8th Cir.2001) (vacating and remanding where BIA concluded that petitioner failed to meet burden of proof

"[w]ithout mentioning or analyzing ... significant evidence"); *Cordero–Trejo v. INS,* 40 F.3d 482, 492 (1st Cir.1994) (remanding where BIA and IJ failed to consider "much of [the petitioner's] evidence," which court characterized as "far too extensive and significant to be dismissed with a general statement"). In *Palavra v. INS,* the Eighth Circuit found that "the Board did not merely fail to discuss [the petitioner's] affidavit. It appeared to ignore it completely, by stating that there was absolutely no evidence to rebut the presumption created by [other evidence]." 287 F.3d at 694. The court held that "[w]hen an agency finds a fact without mentioning or analyzing significant evidence, the agency needs to reconsider its decision." *Id.* at 693. The Eighth Circuit emphasized that reviewing courts may only uphold that agency's order upon the grounds specifically stated by the agency in exercising its powers. *Id.* at 693. Where the BIA failed to consider significant evidence, the court stated, "the BIA has failed to perform its fact-finding function, and ... this case is not ripe for appellate review." *Id.* at 694. "We excuse BIA decisions that fail to consider all factual assertions in an applicant's claim for eligibility only where the evidence in support of a factor potentially giving rise to eligibility is too insignificant to merit discussion." *Qiu,* 329 F.3d at 149 (internal quotation marks omitted).

Reviewing courts have found it particularly troubling when immigration courts overlook country condition reports submitted by petitioners. In *Mostafa v. Ashcroft,* 395 F.3d 622 (6th Cir.2005), the Sixth Circuit granted a petition for review and remanded the case to the BIA for further consideration of a CAT claim where the petitioner argued that the BIA's opinion "fail[ed] to give adequate consideration to the country conditions in Iran." *Id.* at 625. Those country conditions had been discussed in the BIA's prior opinion in *Matter of G–A–,* 23 I. & N. Dec. 366, 367 (BIA 2002) (en banc), where the BIA, relying extensively on country condition reports, found the existence of "extensive human rights abuses committed by the Iranian government." *Mostafa,* 395 F.3d at 625. The Sixth Circuit noted that:

> [a]lthough the 1999 Country Reports for Iran that the Board so extensively discussed in *Matter of G–A–* are included in the record in this case, those reports were never mentioned in the Board's opinion. Also included in the record—but not mentioned in the Board's opinion—are the 2000 Country Reports, which indicate that the problems documented in the 1999 Country Reports and discussed in *Matter of G–A–* continued to persist.

*Id.* at 625–26. "Under these circumstances," the court held, "we must conclude that the Board failed to analyze Alsaf's Convention Against Torture claim in light of relevant country conditions and applicable legal precedent." *Id.* at 626. The First Circuit similarly found error in an IJ's failure to consider country condition reports in *Mukamusoni v. Ashcroft,* 390 F.3d 110, 124–25 (1st Cir.2004). There, the court found significant that the BIA, in finding that the petitioner failed to satisfy her burden of proof, "made no mention of the background and country conditions evidence that [the petitioner] submitted into the record." *Id.* at 123. The court noted that "current regulations state that 'the asylum officer may rely on material provided by the Department of State ... or other credible sources, such as international organizations, private voluntary agencies, news organizations, or academic institutions'" in reviewing an applicant's claim of credible fear of persecution. *Id.* (quoting 8 C.F.R. § 1208.12). The court then found that

the country reports corroborate Mukamusoni's account of persons in her father's position joining the Hutu rebels in Zaire and their subsequent deaths in the Kibeho camp. In addition, the 1999 Human Rights Watch Report for Rwanda contains descriptions of the practices of arbitrary detentions, prison abuses, and military-civilian security sweeps carried out by the RPF government which corroborate Mukamusoni's testimony of her experiences in Rwanda: "The government, citing the need for self-defense against the insurgency, organized civilians to monitor purportedly anti-government activity...." "Military, police, and some civilian officials took thousands of persons into custody during large-scale security sweeps, residential inspections, and verification of identi[ty] papers on the roads. Some of these persons were subsequently released after interrogation that was sometimes accompanied by physical abuse."

*Id.* at 124. The court held that "[i]t was error for the BIA to have ignored the country condition reports because 'this failure [to evaluate the reports] unreasonably eviscerate[d] the applicant's attempt to establish the objective element of her asylum claim,'" and that country condition reports are "'extremely important for contextualizing, in the absence of direct corroboration, the events which [an applicant] claims constitute persecution.'" *Id.* at 124 (quoting *Cordero–Trejo*, 40 F.3d at 491–92 (alterations in original)). The court therefore vacated the decision of the BIA and remanded for further proceedings. *Id.* at 126. The Third Circuit similarly reproached the BIA for its dismissive treatment of country condition reports in *Zubeda v. Ashcroft*, stating that the BIA's decision

> totally ignores the fact that this record is replete with reports from government agencies and human rights organizations

that detail what appear to be country wide, systematic incidents of gang rape, mutilation, and mass murder. Country reports such as the ones [the petitioner] introduced here are the most appropriate and perhaps the best resource for information on political situations in foreign nations.

333 F.3d 463, 477–78 (3d Cir.2003) (internal quotation marks omitted).

■■■ "The BIA has repeatedly emphasized the importance of providing background evidence concerning general country conditions, especially where it tends to confirm the specific details of the applicant's personal experience." *Diallo v. INS*, 232 F.3d 279, 288 (2d Cir.2000) (citing *In re S–M–J–*, 21 I. & N. Dec. 722, 728–30 (BIA 1997), *Matter of Dass*, 20 I. & N. Dec. 120, 124–25 (BIA 1989), and *Matter of Mogharrabi*, 19 I. & N. Dec. 439, 446 (BIA 1987)). Indeed, the BIA has held that State Department country condition reports, "in the absence of contradictory evidence, [are] entitled to considerable deference." *In re T–M–B–*, 21 I. & N. Dec. 775, 779 (BIA 1997) (citing *Kazlauskas v. INS*, 46 F.3d 902, 906 (9th Cir.1995) (stating that country condition profiles developed by the United States State Department are "the most appropriate and perhaps the best resource for information on political situations in foreign nations" (internal quotation marks omitted))), *rev'd on other grounds sub. nom. Borja v. INS*, 175 F.3d 732 (9th Cir.1999); *see also Rojas v. INS*, 937 F.2d 186, 190 n. 1 (5th Cir. 1991). We have noted that State Department reports "often provide a useful and informative overview of conditions in the applicant's home country," while at the same time recognizing that they are not binding on the immigration court. *Chen*, 359 F.3d at 130. In short, "[o]fficial as well as unofficial country reports are probative evidence and can, by themselves,

provide sufficient proof to sustain an alien's burden under the INA." *Zubeda,* 333 F.3d at 477 (citing *Kamalthas v. INS,* 251 F.3d 1279, 1284 (9th Cir.2001)).

Here, it is apparent that the BIA did not consider the 2002 State Department Report on China submitted by Chen. The report corroborates Chen's accounts of what occurred to him and members of his religious community in China and bolsters Chen's subjective fear of future persecution. That report indicates, *inter alia,* that:

> [u]napproved religious groups, including Protestant and Catholic groups and members of nontraditional religious groups, continued to experience varying degrees of official interference, harassment, and repression. The Government continued to enforce regulations requiring all places of religious activity to register with the Government or come under the supervision of official, "patriotic" religious organizations. In some areas, authorities guided by national policy made strong efforts to control the activities of unapproved Catholic and Protestant churches; religious services were broken up and church leaders or adherents were harassed, and, at times, fined, detained, beaten, and tortured.

Certainly, beatings and torture can constitute persecution, and some courts have held that forbidding one from practicing his or her religion constitutes persecution, *Bucur v. INS,* 109 F.3d 399, 405 (7th Cir. 1997) ("[I]t is virtually the definition of religious persecution that the votaries of a religion are forbidden to practice it.... If a person is forbidden to practice his religion, the fact that he is not imprisoned, tortured, or banished, and is even allowed to attend school, does not mean that he is not a victim of religious persecution." (internal citations omitted)). In the instant case, the BIA assumed the credibility of Chen's testimony, which included allegations that Chen's church was destroyed, that members of the church were detained, and that the Chinese government placed Chen's name on a list of those who had distributed religious flyers. The BIA also accepted Chen's testimony that authorities came looking for him at his home. As the country condition report speaks significantly to Chen's fear of future persecution in light of his assumed credible testimony, it was error for the BIA to fail to consider the report's impact on Chen's claim.

Where the immigration court fails to consider important evidence supporting a petitioner's claim, we are "deprived of the ability adequately to review" the claim and must vacate the decision and remand for further proceedings. *Chen,* 359 F.3d at 129. In light of the BIA's failure to consider the relevant country condition report submitted by Chen, we grant the petition for review, vacate the BIA's decision, and remand this case to the BIA for further proceedings. We also note that this remand encompasses an opportunity for the BIA to render a credibility finding.

## CONCLUSION

For the foregoing reasons the petition for review is GRANTED, the decision of the BIA is VACATED, and the case is REMANDED to the BIA for further proceedings consistent with this opinion. The motion for a stay of removal pending our decision is GRANTED; this stay will expire upon issuance of the mandate.