**ZHI KAI CHEN, also known as Wang Lu Qin, Petitioner,**

**v.**

**UNITED STATES DEPARTMENT OF**

JUSTICE, Alberto R. Gonzales,[1]
Attorney General, Respondent.

No. 04–3062–AG.

United States Court of Appeals,
Second Circuit.

Feb. 24, 2006.

Khagrendra Gharti–Chhetry, Chhetry &
Associates, P.C., New York, New York, for
Petitioner.

Barbara S. Sale, Assistant United States
Attorney for the District of Maryland
(David N. Kelly, United States Attorney
for the Southern District of New York,
Joyce R. Lombardi, Law Clerk, Office of
the United States Attorney for the District
of Maryland, on the brief), Baltimore, Ma-
ryland, for Respondent.

PRESENT: Hon. DENNIS JACOBS,
Hon. CHESTER J. STRAUB, and Hon.
SONIA SOTOMAYOR, Circuit Judges.

## SUMMARY ORDER

Zhi Kai Chen petitions for review of the
May 13, 2004 order of the BIA affirming
the decision of the immigration judge
("IJ") to deny his application for asylum,
withholding of removal, and relief under
the Convention against Torture ("CAT").
We assume the parties' familiarity with the
facts of the case, its procedural history,
and the issues on appeal.

Chen argues that the agency's adverse
credibility determination was not sup-
ported by substantial evidence. This
Court reviews the agency's factual find-
ings, including adverse credibility determi-
nations, under the substantial evidence
standard, and as such, "a finding will stand
if it is supported by 'reasonable, substan-

---

1. Pursuant to Federal Rule of Appellate Pro-
cedure 43(c)(2), Attorney General Alberto R.
Gonzales is automatically substituted for for-
mer Attorney General John Ashcroft as the
respondent in this case.

tial, and probative' evidence in the record when considered as a whole." *Secaida–Rosales v. INS*, 331 F.3d 297, 307 (2d Cir.2003) (quoting *Diallo v. INS*, 232 F.3d 279, 287 (2d Cir.2000)). Where, as here, the BIA issues its own independent decision that does not adopt the IJ's decision, this Court reviews the decision of the BIA alone. *See Yan Chen v. Gonzales*, 417 F.3d 268, 271 (2d Cir.2005). We find that the BIA's adverse credibility determination was not supported by substantial evidence.

First, the BIA found it implausible that Chen's wife, knowing that she was pregnant and that she had missed a scheduled IUD checkup, would stay at home and "wait" for the authorities to take her away to undergo an abortion instead of hiding. But there is no basis to assume that Chen's wife knew forced abortion would in fact be the penalty imposed. Nor is there any basis to assume that a person facing a choice between forced abortion and a life underground always, or even normally, chooses the latter. The BIA's finding thus constituted impermissible speculation, which cannot support an adverse credibility determination.[2] *See Secaida–Rosales*, 331 F.3d at 307, 312.

The BIA also noted that the abortion and sterilization certificates Chen presented were not "verified" and did not indicate whether those procedures were forced. The BIA, however, did not cite any evidence that such certificates ever record the coercive nature of the procedure. Nor did it indicate what government authority might have verified the certificate. Thus, the fact that the certificates were not verified was not a legitimate reason to reject them.[3] *See Cao He Lin v. Dep't of Justice*, 428 F.3d 391, 404 (2d Cir.2005) (holding that asylum applicants cannot always reasonably be expected to produce an authenticated document from a government that is an alleged persecutor).

The BIA also found that the evidence was inconsistent as to how Chen's mother paid a fine for Chen's violation of the one-child policy. The BIA, however, identified no specific inconsistency. The IJ apparently attached some significance to the fact that Chen's wife stated that the money had been "brought" to the police, whereas the mother-in-law stated that the money was "sent" to them.[4] In light of the poor quality of the translations of both statements, no reasonable fact-finder could attach any significance to this choice of verbs.

The BIA further found implausible Chen's testimony that when he was arrested attempting to leave China in June 2000, border officials questioned him about the smugglers who had helped him attempt to escape, but not about his Falun Gong practice. The BIA cited no evidence to support its assumption that border officials would be in communication with the local police in Fuzhou who had targeted Chen because of his Falun Gong practice. This finding therefore was also impermissibly speculative.

The BIA twice noted that Chen's I–589 form lists his employer as Langgi Con-

---

2. This finding was adopted by the BIA, but not the IJ. Because we hold that this finding was impermissible, we need not decide whether it violated 8 C.F.R. § 1003.1(d)(3)(iv), which provides that "the Board will not engage in factfinding in the course of deciding appeals."

3. Again, this finding was adopted by the BIA, but appears nowhere in the IJ's decision. Because we hold that this finding was impermis-

sible, we need not decide whether it violated 8 C.F.R. § 1003.1(d)(3)(iv).

4. Chen's wife's letter indicated that "I asked Mother-in-law brought the money to birth control office to save my husband." The letter from his mother-in-law said, "I sent twenty thousand yuan RMB to pay the fine in the birth Control Office on April 8."

struction Co. from July 1996 to July 2001. He testified, however, that he was fired from the company in 1999. This inconsistency appears to be material, because Chen alleged that his firing resulted from the physical debilitation he claimed to have suffered as a result of his sterilization. However, in light of the other serious errors underlying the BIA's decision, we remand so that the agency may determine whether there are other inconsistencies or flaws in Chen's evidence, apart from the impermissible findings discussed above, that support an adverse credibility determination.[5] *See Cao He Lin,* 428 F.3d at 406 ("Even if the IJ's finding as to the sequence of events is correct, we cannot determine how much weight she accorded to this fact as compared to the other two stated reasons that were the basis for her rejection of Cao's testimony about his job termination. Accordingly we remand for clarification of these findings.")

Because Chen has not made any argument regarding his withholding of removal claim, that claim is deemed waived. *See Yueqing Zhang v. Gonzales,* 426 F.3d 540, 542 n. 1 (2d Cir.2005).

Chen also challenges the denial of his claim for relief under the CAT. Because the BIA based its denial of CAT relief on the adverse credibility finding which we now vacate, we also vacate the CAT claim. We remind the BIA that applications for asylum and for relief under CAT demand separate inquiries. Analysis of a CAT claim requires a determination as to whether there is any evidence in the record that establishes an objective likelihood

of torture. *See Ramsameachire v. Ashcroft,* 357 F.3d 169, 185 (2d Cir.2004). "An adverse credibility determination, therefore, will doom an alien's asylum claim, but may not be a particularly significant aspect of the CAT inquiry." *Id.*

For the foregoing reasons, the petition for review is GRANTED, the BIA's opinion VACATED, and the case REMANDED to the BIA for further consideration consistent with this order. The pending motion for a stay of removal is GRANTED until the BIA reconsiders its decision.

---

**5.** The BIA also found implausible Chen's testimony that he did not go into hiding when faced with sterilization but did go into hiding later when he feared that the police would arrest him for his practice of Falun Gong. The BIA's conclusion was arguably speculative, because it is not obvious that most people are more concerned with protecting their ability to reproduce than with their physical safety; nor is it obviously implausible that a person who had once experienced persecution would go into hiding to avoid being persecuted again. We need not decide whether this finding was impermissibly speculative, however, because the need for remand is clear whether it is or not.