**Thierno Abdoul BARRY, Petitioner,**

v.

**Alberto R. GONZALES, Respondent.**

**No. 06–1142–ag.**

United States Court of Appeals,
Second Circuit.

Nov. 2, 2006.

**394**

Thomas V. Massucci, New York, New York, for Petitioner.

Gina Walcott–Torres, Assistant United States Attorney for the District of Massachusetts (Michael J. Sullivan, United States Attorney for the District of Massachusetts, on the brief), Boston, Massachusetts, for Respondent.

PRESENT: Hon. WALKER, Hon. JOSÉ A. CABRANES, Hon. PETER W. HALL, Circuit Judges.

### SUMMARY ORDER

Petitioner Thierno Abdoul Barry, a native and citizen of Guinea, seeks review of a February 17, 2006 order of the BIA affirming the October 5, 2004 decision of Immigration Judge ("IJ") Paul A. Defonzo denying petitioner's application for asylum, withholding of removal, and relief under the Convention Against Torture ("CAT"). *In re Thierno Abdoul Barry*, No. A 95 369 195 (B.I.A. Feb. 17, 2006). We assume familiarity with the underlying facts and procedural history in this case.

When the BIA affirms the IJ's decision in all respects but one, this Court reviews the IJ's decision as modified by the BIA decision—"that is, minus the single argument for denying relief that was rejected by the BIA." *Xue Hong Yang v. U.S. Dep't of Justice*, 426 F.3d 520, 522 (2d Cir.2005). In addition, when the BIA adopts the decision of the IJ and supplements the IJ's decision, we review the decision of the IJ as supplemented by the BIA. *See Yu Yin Yang v. Gonzales*, 431 F.3d 84, 85 (2d Cir.2005); *Yan Chen v. Gonzales*, 417 F.3d 268, 271 (2d Cir.2005). This Court reviews the agency's factual findings, including adverse credibility determinations, under the substantial evidence standard, treating them as "conclusive unless any reasonable adjudicator would be compelled to conclude to the contrary." 8 U.S.C. § 1252(b)(4)(B); *see Zhou Yun Zhang v. INS*, 386 F.3d 66, 73 & n. 7 (2d Cir.2004). However, we will vacate and remand for new findings if the agency's reasoning or its fact-finding process was sufficiently flawed. *Cao He Lin v. U.S. Dep't of Justice*, 428 F.3d 391, 406 (2d Cir.2005); *Tian–Yong Chen v. INS*, 359 F.3d 121, 129 (2d Cir.2004).

■ Substantial evidence does not support the BIA's and IJ's adverse credibility determinations. The IJ misstated the record when he rejected Barry's explanation that the preparer of his first application was responsible for two mistakes in that application: one involving the length of his detention and the other involving when he left Guinea. The IJ described Barry as having alleged that the preparer made a third mistake "with regard to missiles being *fired* into his home." The IJ noted that "although there is a reference in the application to missiles being *thrown* into the home, [ ] there is no reference to missiles being *fired* into [Barry's] home." The IJ concluded that based on "the nature of the inconsistenc[ies]" noted in the first application, and because there were "no other inconsistencies" present in the application, Barry "essentially lied" regarding his claim of past persecution in Guinea. A review of the record does not indicate that Barry ever accused the preparer of his application as stating that PUP members "fired" missiles at his home. Moreover, whether or not the preparer mentioned that the missiles were "fired" or "thrown" at Barry's home was irrelevant and a minor discrepancy. It is clear that Barry was concerned that the preparer had mentioned the use of "missiles" because if that were actually the case, he "would not even be here." The IJ's misstatement and subsequent rejection of the mistake alleged by Barry was significant because the IJ implied that if

there had been "other inconsistencies" present in the application, he might not have found that Barry had "essentially lied regarding his claim of past persecution in Guinea."

The IJ also erred in concluding that Barry "only sought to have his application for asylum corrected [with respect to the date of his departure from Guinea] when he noticed that there were, in fact, departure stamps in his passport from Senegal, September 19, 2001 and an entry stamp in his passport for Senegal, for September 10, 2001," which contradicted his first application. Given that the IJ erroneously rejected Barry's explanation for why his initial application contained errors, and because the IJ failed to point to anything else in the record to support his opinion that Barry deliberately falsified his application, this conclusion was speculative. *See Secaida–Rosales v. INS*, 331 F.3d 297, 307 (2d Cir.2003).

■ The IJ also speculated when he concluded that Barry had not proven a well-founded fear of persecution because it was "most likely" that Barry planned to travel to the United States "all along," and that once he obtained a visa to enter the United States, he "fabricated" a claim of persecution "so that he could depart Guinea." Barry specifically testified that his initial purpose in obtaining a visa was to travel to the United States in order to purchase merchandise. The fact that his alternate reason to travel to the United States—purportedly to escape persecution—developed later did not preclude him from seeking asylum. *See Pavlova v. INS*, 441 F.3d 82, 88 (2d Cir.2006) (remanding a case in which the applicant had a dual purpose in coming to the United States: to escape persecution and to travel to a country that she wished to visit). Moreover, there is nothing in the record to indicate that Barry, whose passport indicates he had previously traveled to countries outside of Guinea, needed to invent an asylum claim in order to depart from his own country, particularly when he already obtained a visa to travel to the United States.

■ The IJ's finding that Barry "submitted next to nothing in support of his claim of past persecution" is also flawed. While the IJ appropriately declined to consider Barry's RPG party card because it had not been translated, the IJ failed to provide an adequate rationale for rejecting the letter on RPG letterhead. The IJ noted that the letter contained a reference to Barry as "having an arrest record, dated February 15, 2000," and that Barry was unable to explain this reference, or to explain why it took the RPG two years to issue the letter. However, although the letter references the date "02/15/2000," there is no indication that this date refers to a record of Barry's arrest. While the record to which the letter refers is unclear, there is no reason to expect Barry to have knowledge of this "record" or the meaning of its date. Because the IJ speculated that the date and record referred to an "arrest record," and unreasonably expected Barry to explain it, this factor does not support an adverse credibility finding. *See Pavlova*, 441 F.3d at 88 (holding that IJ used flawed reasoning in finding implausible a Russian Baptist petitioner's claim that she waited until the murder of a fourth fellow Baptist to apply for asylum, rather than applying after the first three had been murdered); *Secaida–Rosales*, 331 F.3d at 309–10 (holding that IJ used flawed reasoning in finding implausible a petitioner's claim that he faced persecution at a time when he was able to continue to work in a municipal job and to obtain a national identity card).

Finally, the IJ's finding that Barry provided inconsistent evidence with regard to when he actively supported his political

party in 1998 is also flawed. The IJ failed to articulate to which inconsistency he referred. To the extent that this finding was based on Barry's difficulty in remembering exactly when he had traveled to Dubai to obtain t-shirts to distribute during the campaign, it was intertwined with the IJ's determination that Barry had not traveled to the United Arab Emirates at any time after his passport was issued in 1998, a determination that the BIA explicitly declined to adopt.

 On the other hand, the IJ properly identified an inconsistency between Barry's testimony on direct examination that he was detained for six days after being arrested on September 3rd, and his testimony on cross-examination that he was released "on the 6th." This inconsistency was material to Barry's claim of past persecution and supported the adverse credibility ruling.

Nonetheless, in light of these analytical errors, we cannot say that the agency would adhere to the same decision on Barry's asylum, withholding of removal, and CAT claims if the case were remanded. *See Xiao Ji Chen v. U.S. Dept. of Justice,* 434 F.3d 144, 161 (2d Cir.2006); *Cao He Lin,* 428 F.3d at 395. We do not reach the question of whether the BIA erred in determining that Barry failed to demonstrate that he could not relocate to another area of Guinea to avoid future problems; should the IJ find on remand that Barry established past persecution, the government will bear the burden of proof on that issue, *see* 8 C.F.R. § 1208.13(b)(3)(i).

For the foregoing reasons, the petition for review is GRANTED, the decision of the BIA is VACATED, and the case REMANDED for further proceedings consistent with this decision. Having completed our review, any stay of removal that the Court previously granted in this petition is VACATED, and any pending motion for a stay of removal in this petition is DENIED as moot. Any pending request for oral argument in this petition is DENIED in accordance with Federal Rule of Appellate Procedure 34(a)(2), and Second Circuit Local Rule 34(d)(1).