Jarnail SINGH, Petitioner,

v.

Michael B. MUKASEY, Attorney General, Respondent.

No. 07–0968–ag.

United States Court of Appeals, Second Circuit.

Feb. 13, 2008.

Hector M. Roman, Jackson Heights, NY, for Petitioner.

Norah Ascoli Schwarz, Senior Litigation Counsel, Office of Immigration Litigation, U.S. Department of Justice, Washington, D.C., for Respondent.

PRESENT: CHESTER J. STRAUB, ROSEMARY S. POOLER and B.D. PARKER, Circuit Judges.

### SUMMARY ORDER

Jarnail Singh, a native and citizen of India, seeks review of a February 13, 2007

order of the BIA affirming the July 25, 2005 decision of Immigration Judge ("IJ") William F. Jankun, denying his application for asylum, withholding of removal, and relief under the Convention Against Torture ("CAT"). *In re Jarnail Singh,* No. A70 585 924 (B.I.A. Feb. 13, 2007), *aff'g* No. A70 585 924 (Immig. Ct. N.Y. City July 25, 2005). We assume the parties' familiarity with the facts, the proceedings below, and the specification of issues on appeal.

When the BIA affirms the IJ's decision in all respects but one, this Court reviews the IJ's decision as modified by the BIA decision, i.e., "minus the single argument for denying relief that was rejected by the BIA." *Xue Hong Yang v. U.S. Dep't of Justice,* 426 F.3d 520, 522 (2d Cir.2005). We review de novo questions of law and the application of law to undisputed fact. *See Secaida–Rosales v. INS,* 331 F.3d 297, 307 (2d Cir.2003). This Court reviews the agency's factual findings under the substantial evidence standard. 8 U.S.C. § 1252(b)(4)(B); *see, e.g., Tao Jiang v. Gonzales,* 500 F.3d 137, 140 (2d Cir.2007). The Court will vacate and remand for new findings if the agency's reasoning or its fact-finding process was sufficiently flawed. *Cao He Lin v. U.S. Dep't of Justice,* 428 F.3d 391, 395, 406 (2d Cir.2005); *Tian–Yong Chen v. INS,* 359 F.3d 121, 129 (2d Cir.2004).

■ Although the IJ made an adverse credibility finding, the BIA "specifically" agreed only to (1) "the Immigration Judge's alternative finding that, even assuming that the respondent testified credibly so as to establish a presumption of well-founded fear of persecution based on past persecution, the evidence has established that it would be reasonable under all the circumstances of record for the respondent to internally relocate within India" and (2) "the Immigration Judge's determi-

nation that the evidence of record demonstrates a change in country conditions such that respondent no longer has a well-founded fear of future persecution in India." The BIA's use of the phrase "specifically" limits its affirmance of the IJ's opinion to the grounds explicitly discussed by it while rejecting all other grounds. Thus, this Court construes the BIA's opinion as reversing the IJ's adverse credibility finding and affirming only the other grounds Singh challenges. *Cf. Yan Chen v. Gonzales,* 417 F.3d 268, 271 (2d Cir. 2005). We discuss the two grounds with which the BIA expressed agreement in turn.

■ As to the first ground, because we assume that Singh's testimony credibly established a presumption of a well-founded fear of persecution based on past-persecution, the burden falls on the government to show that Singh could avoid persecution by relocating to another part of India. *See* 8 C.F.R. § 1208.13(b)(1)(i)(B); *see Kyaw Zwar Tun v. I.N.S.,* 445 F.3d 554, 565 (2d Cir.2006). Further, there is a statutory presumption that when the government carries out the persecution (such as the Indian Police allegedly and presumptively did here), internal relocation is not a viable option. *See* 8 C.F.R. § 1208.13(b)(3)(ii). By contrast, the IJ, while assuming *arguendo* that "the respondent had difficulties with the authorities in India," erroneously placed the burden on Singh to establish that internal relocation is not a viable option, and made no mention of the contrary statutory presumptions. *See* No. A70 585 924 (Immig. Ct. N.Y. City July 25, 2005) (stating that "an applicant for asylum and withholding of removal must do more than show that he feels persecution in a particular area within the country, he must show the threat of persecution exists for him countrywide.").

 Further, although the agency is not required to discuss every piece of evidence, the agency cannot ignore uncontroverted, material evidence. *See, e.g., Tian–Yong Chen,* 359 F.3d at 128–29 (remanding where IJ and BIA failed to consider a "significant aspect" of the petitioner's testimony); *Yan Chen,* 417 F.3d at 271 ("The BIA, when considering an appeal, must actually consider the evidence and argument that a party presents." (internal citations omitted)). Here, the IJ and the BIA failed to consider the applicant's testimony, supported by two affidavits, that the police came to his familial house in Punjab two months prior to the hearing in order to look for him, because the Indian Police keep track of all the members of the All Indian Sikh Student Foundation ("AISSF"), a Sikh separatist group, in India. Similarly, the IJ and BIA failed to consider Singh's testimony that he would be required to show his identification card anywhere in India he tried to relocate, and that this would put him into the hands of the police that continue to look for him. Since it is assumed that Singh's testimony was credible, an evaluation of this testimony is critical to determining whether internal relocation is a viable option. Further, the IJ and BIA did not undertake the statutorily required inquiry into whether, even if relocation is a viable option, it would be reasonable for the applicant to relocate "under all the circumstances," taking into account Singh's "social and cultural constraints ... [and] family ties" to the Punjab region. *See* 8 C.F.R. § 1208.13(b)(3).

 As to the second ground, because it is assumed that Singh's testimony was credible and established past persecution, the government bears the burden of "showing that conditions in the country of origin have changed to the degree that the danger no longer exists." *Secaida–Ro-*

*sales,* 331 F.3d at 306. In support of his conclusion that circumstances had changed, the IJ noted his findings that (i) the current prime minister in India is Sikh; (ii) the pattern of disappearances prevalent in the early 1990s in India has ended; and (iii) there is no indication that there is a constant search for members of the AISSF. "Therefore," the IJ concluded, "the Court finds for all the above reasons the respondent has failed to establish a well-founded fear of persecution ... as necessary in order to be statutorily eligible for asylum." No. A70 585 924 (Immig. Ct. N.Y. City July 25, 2005). In this discussion, the IJ erroneously placed the burden on Singh to show that the threat of persecution continues to exist in India. This is improper, assuming, as we must, that Singh established past persecution.

Further, although an IJ may rely on country reports, IJs should not place excessive reliance on these reports and the BIA errs when it "base[s] its conclusion solely on information selectively extracted from" the relevant country report and fails to consider contradictory evidence. *Tambadou v. Gonzales,* 446 F.3d 298, 302–04 (2d Cir.2006). Contrary probative evidence not considered by the IJ in this case includes the following. According to the 2005 Country Conditions Report on India submitted by the petitioner, the Punjab police continue to engage in well-documented, widespread human rights abuses. *See* U.S. Dep't of State, *Country Report on Human Rights Practices, 2005, India* (March 2006) *available at* http://www.state.gov/g/drl/rls/hrrpt/2005/61707.htm ("[Punjab P]olice had received 17 thousand complaints in 2004, including 6,261 from the Punjab State Human Rights Commission [and] 376 from the NHRC [the National Human Rights Commission] ... The media reported that courts found 59 police officers guilty of violating human rights in Punjab in 2004."). According to 2002

newspaper reports submitted by Singh, these Punjab police abuses appear to be focused on political rivals, who are often "targeted by the police" and subject to regular police raids in their homes. Conforming to this pattern, Singh testified that the Indian Police came to his house about two months prior to the hearing, because they want to keep track of all the members of AISSF. He submitted several affidavits from India supporting this testimony, including one from his father, one from the doctor who treated him, and one from a representative of AISSF. More broadly, according to the 2005 Report, the Indian Police detained "hundreds of suspected ... separatists," and killed many of those in custody. *See id.* ("During the year deaths in custody were common, especially for alleged insurgents. From 2002–03, the Home Ministry reported that custodial deaths increased from 1,340 in 2002 to 1,462 by the end of 2003. According to the NHRC, state governments had not investigated at least 3,575 previous deaths in custody cases."). Among their political rivals, the 2004 Country Conditions Report indicates that the Indian authorities have singled out Sikh separatists for especially prejudicial treatment. *See* U.S. Dep't of State, *Country Report on Human Rights Practices, 2004, India* (Feb. 2005) *available at* http://www.state.gov/g/drl/rls/hrrpt/2004/41740.htm (noting that the Indian Government in 2003 used the Passports Act of 1967 "to prohibit the foreign travel of some government critics, especially those advocating Sikh independence"). Singh, whose credibility is assumed, provided uncontested testimony that he is a member of AISSF. Taken together, this evidence lends objective support to Singh's stated fear that, as a Sikh separatist, he may be captured and killed by the police if forced to return to India.

■ The IJ, however, failed to discuss any of this contrary information contained in the country reports on India and selectively cited only the largely immaterial statement in the 2004 report that "the pattern of disappearances in the Punjab prevalent in the 1990s [has] ended" and the cursory, outdated statement in the 1999 report that "Life in the Punjab is normal." *Cf. Yan Chen,* 417 F.3d at 273 ("Reviewing courts have found it particularly troubling when immigration courts overlook country condition reports submitted by petitioners.").

Accordingly, in light of the weighty, unconsidered evidence in the record indicating that internal relocation is not a viable option and that the relevant circumstances have not changed, and in light of the impermissible shifting of the burden to Singh, we cannot "state with confidence" that, despite the IJ's errors, "the IJ would adhere to his decision were the petition remanded." *See Tandia v. Gonzales,* 437 F.3d 245, 250 (2d Cir.2006) (per curiam). Indeed, because the IJ's decision "omit[ted] potentially significant facts" so fundamental to the claim that "we are unable adequately to consider whether substantial evidence support[ed] the BIA's determination," a remand is appropriate. *See Tian–Yong Chen,* 359 F.3d at 127.

■ Because Singh failed to challenge the IJ's denial of CAT relief in his appeal to the BIA, we are without jurisdiction to consider any challenge to the denial of that relief and dismiss the petition for review to that extent. *See* 8 U.S.C. § 1252(d)(1).

We therefore grant the petition for review in part, dismiss in part, vacate the BIA's order in part, and remand for further proceedings. Petitioner's pending motion for a stay of removal is denied as moot.