**Mikail Hamza OUMAR, Petitioner,**

v.

**Michael B. MUKASEY, Attorney General,[1] Respondent.**

No. 07–4011–ag.

United States Court of Appeals, Second Circuit.

June 24, 2008.

---

1. Pursuant to Federal Rule of Appellate Procedure 43(c)(2), Attorney General Michael B. Mukasey is automatically substituted for former Acting Attorney General Peter D. Keisler Jr. as the respondent in this case.

Carroll L. Lucht, Nicole Hallett, Michael Tan, Jerome N. Frank Legal Services Organization, Yale Law School, New Haven, CT, for Petitioner.

Jeffrey S. Bucholtz, Acting Assistant Attorney General, Civil Division; Linda S. Wernery, Assistant Director; Gregory M. Kelch, Attorney, U.S. Department of Justice, Washington, D.C., for Respondent.

PRESENT: Hon. CHESTER J. STRAUB, Hon. ROBERT A. KATZMANN and Hon. B.D. PARKER, Circuit Judges.

### SUMMARY ORDER

Petitioner Mikail Hamza Oumar, a native and citizen of Darfur, Sudan, seeks review of an August 24, 2007 order of the BIA affirming the April 27, 2006 decision of Immigration Judge ("IJ") Michael W. Straus denying his application for asylum, withholding of removal, and relief under the Convention Against Torture ("CAT"). *In re Mikail Hamza Oumar*, No. A 990 079 842 (B.I.A. Aug. 24, 2007), *aff'g* No. A 990 079 842 (Immig. Ct. Hartford, Apr. 27, 2006). We assume the parties' familiarity with the underlying facts and procedural history in this case.

When the BIA adopts the decision of the IJ and supplements the IJ's decision, this Court reviews the decision of the IJ as supplemented by the BIA. *See Yan Chen v. Gonzales*, 417 F.3d 268, 271 (2d Cir. 2005). We review the agency's factual findings, including adverse credibility findings, under the substantial evidence standard, treating them as "conclusive unless any reasonable adjudicator would be compelled to conclude to the contrary." 8 U.S.C. § 1252(b)(4)(B); *see, e.g., Shu Wen Sun v. BIA*, 510 F.3d 377, 379 (2d Cir. 2007). However, we will vacate and remand for new findings if the agency's reasoning or its fact-finding process was sufficiently flawed. *See Cao He Lin v. U.S. Dep't of Justice*, 428 F.3d 391, 406 (2d Cir.2005); *Tian–Yong Chen v. INS*, 359 F.3d 121, 129 (2d Cir.2004); *see also Xiao Ji Chen v. U.S. Dep't of Justice*, 471 F.3d 315, 339–40 (2d Cir.2006) (agreeing with this principle, but declining to remand, in spite of deficiencies in an adverse credibility determination, because it could be confidently predicted that the IJ would adhere to the decision were the case remanded).

■ We conclude, as Oumar asserts, that the IJ erred by placing the burden of proof concerning firm resettlement on him. An alien is generally not eligible for asylum if he or she "was firmly resettled in another country prior to arriving in the United States." 8 U.S.C. § 1158(b)(2)(A)(vi). The Government has the initial burden of establishing a *prima facie* case for firm resettlement before the burden shifts to the applicant to show that an exception applies and that a finding of firm resettlement would be inappropriate in the particular case. *See Sall v. Gonzales*, 437 F.3d 229, 233–34 (2d Cir.2006) (vacating and remanding because the IJ had (1) misstated the burden, (2) failed to consider the totality of the circumstances with regard to firm resettlement, and (3) erred in finding the petitioner not credible).

Here, the record reflects that the Government explicitly refrained from arguing below that Oumar was firmly resettled in Chad, instead proceeding on its theory that he was actually a citizen of Chad. Oumar submitted a passport from Chad, testifying that it had been obtained under false pretenses. Despite the existence of the Chadian passport, the IJ determined that Oumar was indeed a citizen of Sudan and that he had demonstrated past persecution in Sudan on account of his race and political opinion. Additionally, the IJ found that there had not been a fundamental change in circumstances such that Oumar no longer had a well-founded fear of persecution in Sudan. Thus, it was the Government's burden to establish that Oumar had firmly resettled in Chad. *See Sall*, 437 F.3d at 233–34.

Although the BIA determined that the IJ "appropriately considered the 'totality of the circumstances'" and found that the record established a *prima facie* case that Oumar was firmly resettled in Chad, there is no indication that the IJ performed such an analysis. 8 U.S.C. § 1158(b)(2)(A)(vi); *Sall*, 437 F.3d at 233–35. To the extent the IJ found that Oumar was firmly resettled, that determination was based solely on the "Provisional Refugee Certificate." However, an offer of "provisional" refugee status, without more, is insufficient to establish firm resettlement, particularly where there is no indication in the record that Chad's immigration laws afford legal status to an individual in Oumar's position. *See Sall*, 437 F.3d at 233; *see also Cao He Lin*, 428 F.3d at 405 (holding that "absent evidence of practices in foreign countries, the IJ must not speculate as to the existence or nature of such practices").

█ Moreover, the record does not support the IJ's finding that Oumar's claim that his refugee certificate would not protect him from deportation was "contradict-ed by the background materials." The 2005 State Department Country Report on Human Rights Practices for Chad states that the Chadian government cooperated with the UN High Commissioner for Refugees and other humanitarian organizations in assisting refugees and asylum seekers by hosting approximately 220,000 Sudanese refugees from Darfur along the country's eastern border. However, the report also states that the Chadian government was not in compliance with the 1951 UN Convention relating to the Status of Refugees because it did not provide for the granting of asylum or refugee status. Additionally, the report states that civilian authorities did not maintain effective control of security forces, which "committed or sanctioned serious human rights abuses," and engaged in extrajudicial killings, tortures, beatings, rapes, and arbitrary arrests and detention. Such country conditions were relevant to Oumar's belief that his refugee certificate would not protect him from Chadian authorities whom he alleged threatened to deport and/or kill him. *See Xiao Ji Chen*, 471 F.3d at 341 (emphasizing that in rejecting an applicant's claim, the IJ should "consider all the evidence in the record that has probative value").

Further, as the IJ observed, more recent documents, including 2006 reports from Human Rights Watch and the International Crisis Group, indicate that "the Darfur conflict has essentially expanded into Chad." For example, the Human Rights Watch report states that the government of Chad has several times accused Sudan of harboring and supporting Chadian rebels and sponsoring attacks on its territory. Likewise, the Sudanese government has responded with denials and accused Chad of intrusions into Sudan. Indeed, as referenced by the IJ, several news articles submitted by Oumar stated

**830**

that in the weeks prior to his merits hearing in April 2006, the Chadian government "broke off diplomatic relations with Sudan," and "threatened to expel 200,000 Sudanese refugees" after a rebel attack in the capital killed approximately 350 people. While there is no indication in the record that this threat was carried out, the tenuous relations between Chad and Sudan further undermined any suggestion that Oumar's "Provisional Refugee Certificate" immunized him from deportation. In light of those aspects of the background materials indicating that Chad (1) did not have any laws that officially provided for the granting of refugee status; (2) had actually threatened to expel Darfurian/Sudanese refugees previously; and (3) had increasingly become entangled in the Darfur conflict, the IJ's finding that the documents "contradicted" Oumar's fear that he would be deported by the Chadian government was not supported by substantial evidence. *See Secaida–Rosales v. INS,* 331 F.3d 297, 307 (2d Cir.2003).

Moreover, even assuming that substantial evidence supported the IJ's adverse credibility finding, a finding we decline to make here, this case would require remand. The IJ found that Oumar's testimony regarding his circumstances in Chad and his treatment by Chadian officials was not credible. However, while that finding would have been relevant to Oumar's ability to rebut a proper finding of firm resettlement, it had no bearing on the Government's burden of proving that he was firmly resettled in Chad in the first instance. *See Sall,* 437 F.3d at 233–34.

For the foregoing reasons, the petition for review is GRANTED, the decision of the BIA is VACATED, and the case REMANDED for further proceedings consistent with this order. As we have completed our review, the pending motion for a stay of removal in this petition is DE-NIED as moot. The pending request for oral argument in this petition is DENIED in accordance with Federal Rule of Appellate Procedure 34(a)(2), and Second Circuit Local Rule 34(b).