Sako v. Holder

BIA
Vomacka, IJ
A200 077 391

# UNITED STATES COURT OF APPEALS
# FOR THE SECOND CIRCUIT

# SUMMARY ORDER

RULINGS BY SUMMARY ORDER DO NOT HAVE PRECEDENTIAL EFFECT. CITATION TO A SUMMARY ORDER FILED ON OR AFTER JANUARY 1, 2007, IS PERMITTED AND IS GOVERNED BY FEDERAL RULE OF APPELLATE PROCEDURE 32.1 AND THIS COURT'S LOCAL RULE 32.1.1. WHEN CITING A SUMMARY ORDER IN A DOCUMENT FILED WITH THIS COURT, A PARTY MUST CITE EITHER THE FEDERAL APPENDIX OR AN ELECTRONIC DATABASE (WITH THE NOTATION "SUMMARY ORDER"). A PARTY CITING A SUMMARY ORDER MUST SERVE A COPY OF IT ON ANY PARTY NOT REPRESENTED BY COUNSEL.

At a stated term of the United States Court of Appeals for the Second Circuit, held at the Thurgood Marshall United States Courthouse, 40 Foley Square, in the City of New York, on the 13th day of March, two thousand thirteen.

PRESENT:
>       ROBERT D. SACK,
>       RAYMOND J. LOHIER, JR.,
>               *Circuit Judges*,
>       JOHN G. KOELTL,[*]
>               *District Judge*.

_____

BOURAHIMA SAKO,

>       *Petitioner*,

>       v.                                          12-461

ERIC H. HOLDER, JR., UNITED STATES ATTORNEY GENERAL,

>       *Respondent*.

_____

---

[*]The Honorable John G. Koeltl, of the United States District Court for the Southern District of New York, sitting by designation.

FOR PETITIONER:             Michael J. Campise, Ferro & Cuccia, New York, NY.

FOR RESPONDENT:             Stuart F. Delery, Acting Assistant Attorney General, Civil
                            Division; David V. Bernal, Assistant Director; Anthony C.
                            Payne, Senior Litigation Counsel, Office of Immigration
                            Litigation, United States Department of Justice,
                            Washington, D.C.

UPON DUE CONSIDERATION of this petition for review of a Board of Immigration

Appeals ("BIA") decision, it is hereby ORDERED, ADJUDGED, AND DECREED that the

petition for review is DENIED in part and DISMISSED in part.

Bourahima Sako, a native and citizen of Cote d'Ivoire not lawfully admitted for

permanent residence in the United States, seeks review of a January 6, 2012, order of the BIA

affirming the December 3, 2009, decision of an Immigration Judge ("IJ") denying his application

for cancellation of removal.  In re Bourahima Sako, No. A200 077 391 (B.I.A. Jan. 6, 2012),

aff'g No. A200 077 391 (Immig. Ct. N.Y.C. Dec. 3, 2009).  We assume the parties' familiarity

with the underlying facts and procedural history in this case.

We review the IJ's decision as supplemented and modified by the BIA.  See Xue Hong

Yang v. U.S. Dep't of Justice, 426 F.3d 520, 522 (2d Cir. 2005); Yan Chen v. Gonzales, 417

F.3d 268, 271 (2d Cir. 2005).

To demonstrate eligibility for cancellation of removal, Sako must establish that his

"removal would result in exceptional and extremely unusual hardship to [his] spouse, parent, or

child, who is a citizen of the United States or an alien lawfully admitted for permanent

residence."  8 U.S.C. § 1229b(b)(1)(D).  Here, the IJ concluded, and the BIA agreed, that Sako

had not demonstrated that his removal would result in exceptional and extremely unusual

hardship to his United States citizen daughters.

We have jurisdiction to consider Sako's argument that the BIA erred by mischaracterizing record evidence relevant to the hardship determination. See 8 U.S.C. § 1252(a)(2)(B), (D); Mendez v. Holder, 566 F.3d 316, 322-23 (2d Cir. 2009) (per curiam); see also Ilyas Khan v. Gonzales, 495 F.3d 31, 35 (2d Cir. 2007) (holding that the "analysis of whether a petition presents reviewable claims focuses on the nature of the claims raised and not on the merits of those claims"). Sako's only reviewable argument regarding mischaracterized evidence is that the agency mischaracterized a letter from his daughter's doctor.[1] Sako argues that the BIA mistakenly stated that the letter indicated that Sako's daughter should be monitored for the presence of certain symptoms but that there was no certainty that those symptoms would occur in the future. Sako claims that the letter in fact states that future symptoms and surgery would be inevitable.

We disagree. Sako misconstrues the doctor's letter, which states that the doctor will "continue to follow [Sako's daughter] along on a yearly basis" to monitor whether there are any signs of her spinal cord "re-tethering," which is a "distinct possibility." The letter also states that symptoms of spinal cord re-tethering could "include numbness, tingling, or bowel and bladder dysfunction" and that, if the spinal cord did re-tether, whether the re-tethering was "clinically significant" would be determined only through close monitoring of the condition.

---

[1]Sako also argues that the IJ and the BIA erred in finding that the possibility that his daughters would undergo female genital mutilation ("FGM") in Cote d'Ivoire did not constitute exceptional and extremely unusual hardship. He asserts that the agency "misperceived the record" by assuming that he could be with his daughters at all times in order to prevent FGM, but fails to address the BIA's conclusion that he did not show that his daughters would return with him to Cote d'Ivoire. Accordingly, he does not raise a constitutional claim or question of law with regard to the issue, and as a result we are without jurisdiction to consider it. See 8 U.S.C. § 1252(a)(2)(B), (D).

3

In his decision, the IJ specifically noted that the letter indicated that there was "'a distinct possibility'" that the spinal cord would re-tether, but that this was "not enough to show that it [wa]s a probability." The IJ also determined that even if the spinal cord did re-tether, the doctor's letter did not indicate that the re-tethering would cause exceptional and extremely unusual hardship to Sako's daughter. The IJ further found that Sako's wife's "equivocal" testimony was "not enough to show that there is a probability that she would leave the U.S. with the children if she had to actually face that choice . . . ."

The BIA affirmed the IJ's decision on the ground that the doctor's letter did not indicate that the symptoms of re-tethering would occur, or, if they did, that the symptoms would constitute exceptional and extremely unusual hardship. We cannot say that the BIA or the IJ mischaracterized the evidence regarding Sako's daughter's medical condition, or erred in determining that Sako failed to show that his removal would cause his daughter exceptional and extremely unusual hardship.

For the foregoing reasons, the petition for review is DENIED in part and DISMISSED in part.[2]

FOR THE COURT:
Catherine O'Hagan Wolfe, Clerk

---

[2]Sako also argues that he is a well-qualified candidate for the exercise of prosecutorial discretion. This Court does not have jurisdiction over the Government's exercise of prosecutorial discretion in this case. That said, the BIA noted that its denial of cancellation of removal was "a close case," and discretion to allow Sako to "remain in the United States and continue to function as a contributing member of this society" remains available to the Government. Cheruku v. Att'y Gen., 662 F.3d 198, 212 (3d Cir. 2011) (McKee, C.J., concurring).

4