Nikolla MUSHKA, Petitioner,

v.

**IMMIGRATION AND NATURALIZATION SERVICE,** Respondent.

Docket No. 03–4378.

United States Court of Appeals, Second Circuit.

Sept. 19, 2005.

Neil A. Weinrib, Neil A. Weinrib and Associates, New York, NY, for Petitioner.

Edward J. McElroy, United States Attorney for the Eastern District of New York, New York, NY. (Hillary W. Frooman, Assistant United States Attorney, on the brief), for Respondent.

Present: CARDAMONE, McLAUGHLIN, and POOLER, Circuit Judges.

## SUMMARY ORDER

**ON CONSIDERATION WHEREOF, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED** that the petition is **GRANTED** and the order appealed from **VACATED.**

Nikolla Mushka appeals from a January 23, 2003 order of the Board of Immigration Appeals ("BIA") affirming the decision of an Immigration Judge ("IJ") directing Mushka's removal from the United States and denying his requests for asylum and withholding of removal. We assume the parties' familiarity with the facts, procedural history, and specification of issues on appeal.

The IJ found that Mushka failed to establish past persecution through his testimony because his testimony was not credible due to inconsistencies, contradictions between testimony and documentary evidence, and the inherent implausibility of Mushka's account of events reconciling these contradictions. Specifically, the IJ found that Mushka was actually in Greece, rather than Albania, during the alleged political activities giving rise to Mushka's asylum application. The IJ primarily based this conclusion on Mushka's passport stamps which suggest that Mushka was in Greece during this time. The IJ found Mushka's explanation for the sporadic stamping unpersuasive and concluded that Mushka's statements were clearly fabricated for obtaining immigration benefits.

Having found that Mushka did not establish past persecution, the IJ then found that Mushka failed to establish a likelihood of future persecution. The IJ disagreed with Mushka's characterization of the plight of ethnic Greeks in Albania. Relying on *Country Reports on Human Rights Practices,* the IJ noted that Greeks constitute the largest minority in the Albanian parliament and receive the most assistance from abroad. The IJ thus denied asylum. Alternatively, the IJ indicated that she would not exercise her discretion to grant asylum because Mushka abandoned his "safe haven" in Greece.

The IJ also found that Mushka deliberately fabricated his asylum application. She based this finding on the same testimony and passport evidence that led her to deny Mushka's asylum application. From this, she ordered that Mushka's asylum application be deemed frivolous.

The IJ then denied withholding of removal, without further analysis, based on her finding that Mushka had not established entitlement to asylum.

The BIA summarily affirmed the IJ's decision.

■ The entire basis for the IJ's finding that Mushka failed to establish past persecution was Mushka's lack of credibility. Inconsistencies and implausibilities are bases on which an IJ can find adverse credibility. See Diallo v. I.N.S., 232 F.3d 279, 287–88 (2d Cir.2000) (quoting In re S–M–J–, 21 I. & N. Dec. 722, 729 (BIA 1997) (explaining that adverse-credibility findings are properly premised "upon inconsistent statements, contradictory evidence, and inherently improbable testimony")). We review the IJ's determination using the substantial-evidence standard, reversing only if " 'no reasonable fact-finder could have failed to find' that petitioner suffered past persecution or had a well-founded fear of future persecution." Ramsameachire v. Ashcroft, 357 F.3d 169, 177 (2d Cir.2004) (quoting Diallo v. I.N.S., 232 F.3d at 287). We will reverse, however, where the IJ's finding is based on speculation or an incorrect analysis of the testimony. Ramsameachire, 357 F.3d at 178. This includes conclusions drawn from unfounded cultural assumptions regarding the lack of supporting documentary evidence in the record. See Qiu v. Ashcroft, 329 F.3d 140, 154 (2d Cir.2003).

The IJ predominantly based its adverse-credibility finding on the conclusion that Mushka fabricated his whereabouts during the incidents at issue. Supporting this, the IJ pointed to the stamps in Mushka's passport, rejecting Mushka's claim that border guards sporadically stamped passports. The IJ's blanket characterization of the "occasional stampage" as "ridiculous and totally implausible" suggests an unfounded cultural-based assumption like that denounced in Qiu. See id. Moreover, the IJ employed flawed reasoning when she determined that numerous stamps necessarily disprove Mushka's claim of occasional stamping. Such flawed reasoning cannot support a finding based on substantial evidence. See, e.g., Secaida–Rosales v. I.N.S., 331 F.3d 297, 307 (2d Cir.2003). Indeed, Mushka's passport actually supports his claim of sporadic stamping. For instance, his passport contains consecutive exit stamps with no intermediary entry stamp. It also contains very few stamps for a man testifying to repeated border crossings.

The IJ also based her adverse-credibility finding on Mushka's testimony regarding his status in Greece stating that Mushka "has indicated that he has no real status in Greece." However, Mushka repeatedly testified to visitor's status in Greece. Thus, the IJ's mischaracterization of Mushka's testimony does not support a finding based on substantial evidence. See Ramsameachire, 357 F.3d at 178. Therefore, the IJ's adverse-credibility finding cannot stand.

Similarly, the IJ's alternative discretionary denial of Mushka's application cannot stand. We review discretionary decisions for abuse of discretion. See Melendez v. United States Dep't of Justice, 926 F.2d 211, 218 (2d Cir.1991). Because application of an improper legal standard is necessarily an abuse of discretion, see Cooter & Gell v. Hartmarx Corp., 496 U.S. 384, 405, 110 S.Ct. 2447, 110 L.Ed.2d 359 (1990), we may vacate even a discretionary denial of asylum if the IJ committed legal error.

The IJ based its discretionary denial on an incorrect legal standard. As a preliminary matter, the IJ erroneously cited to a non-existent regulation, 8 C.F.R. § 208.13(b)(2)(D), in support of her finding

that a discretionary denial was warranted. She may have intended to cite 8 C.F.R. § 208.13(d), which existed at the time of her decision but was repealed by amendment prior to the BIA's decision, *see* Dep't of Justice Asylum Procedures, 65 Fed. Reg. 76,121, 76,126 (Dec. 6, 2000). Either way, the IJ failed to discuss the regulation at all. Such vagueness arguably provides grounds for vacatur.

■ Assuming the IJ had supported her discretionary denial with a discussion of 8 C.F.R. § 208.13(d), it still should not stand because the regulation's requirements were not satisfied. The regulation permitted discretionary denial if a third country has offered resettlement to the alien, and the alien will not face harm or persecution in the third country. 8 C.F.R. § 208.13(d) (1998). Although our case law addresses "firm resettlement," rather than "resettlement," it would be difficult to argue-and the IJ did not-that Greece actually offered Mushka resettlement. Even if resettlement presents a lower bar than firm resettlement-which requires an offer of citizenship, permanent residence, or other permanent resettlement, *see* 8 C.F.R. § 208.15—a temporary tourist visa that precludes employment cannot reasonably suffice.

■ Even assuming Mushka was offered resettlement, he arguably would face harm in Greece. Mushka testified that he could not obtain papers to work in Greece and that when he worked without papers, he was exploited and paid less than Greek citizens. He also testified that Albanians who were caught working in Greece were taken immediately to the border, where their passports were destroyed. We have no case law on what constitutes "harm" under § 208.13(d), but the Ninth Circuit-the only federal circuit court that has interpreted § 208.13(d)—has interpreted "harm" as "a lesser form of threatened injury" that includes "discrimination and harassment." *Andriasan v. I.N.S.,* 180 F.3d 1033, 1045 (9th Cir.1999). The burden to show no harm is on the I.N.S. *Id.* This compels us to find that the IJ applied an overly strict standard by placing the burden on Mushka and by disregarding the discrimination and exploitation as harm. Because the IJ applied an incorrect legal standard in issuing the discretionary denial of asylum, she abused her discretion.

■ Remand is also required on Mushka's contention that he is entitled to mandatory withholding of removal. *See Qiu,* 329 F.3d at 148 (explaining that entitlement to withholding of removal requires a showing that it is more likely than not that an applicant's life or freedom would be threatened because of a privileged ground). The IJ did not reach this issue because the showing for withholding of removal is greater than that for asylum, *see Ramsameachire,* 357 F.3d at 178, and she had determined that Mushka did not make this lesser showing. Because we have determined that the IJ erred in finding that Mushka failed to satisfy this lesser showing, we vacate the order of the BIA affirming the IJ's decision denying withholding of removal.

Additionally, based on our holding that the IJ's adverse-credibility finding cannot stand, we also hold that the IJ erred in deeming Mushka's asylum application frivolous.

In sum, we grant the petition for review, vacate the denial of asylum on both credibility and discretionary grounds, and remand for further consideration of the claim to withholding of removal.