07-3146-ag
Liao v. Holder

UNITED STATES COURT OF APPEALS

FOR THE SECOND CIRCUIT

_____

August Term, 2008

(Argued: August 29, 2008                    Decided: March 4, 2009)

Docket No. 07-3146-ag

_____

JIN YI LIAO, XIAO ZHI WU,

*Petitioners*,

– v. –

ERIC H. HOLDER, JR., Attorney General of the United States,[1]

*Respondent.*

_____

Before: CALABRESI, SOTOMAYOR, B.D. PARKER, *Circuit Judges*.

_____

Petition for review from an order of the Board of Immigration Appeals denying

Petitioners, a native citizen of China claiming political persecution and her Dominican-born son

applying for derivative status, asylum and withholding of removal.  The Board affirmed the

decision of the Immigration Judge, who, based on a two month "Residencia" visa, found that

Petitioner was "firmly resettled" in the Dominican Republic, and therefore ineligible for asylum.

---

[1] Pursuant to Federal Rule of Appellate Procedure 43(c)(2), Attorney General Eric Holder has been substituted for former Attorney General Alberto R. Gonzales.

*See* 8 U.S.C. § 1158(b)(2)(A)(vi).  We hold that such a temporary visa, without more, cannot establish that an applicant has, under the "totality of the circumstances" test employed by our Circuit, been "firmly resettled" in a third country as defined in 8 C.F.R. § 208.15.  Moreover, we find that the Board's decision that Petitioner did not qualify for the exception to firm resettlement for applicants whose entry into another country was a "necessary consequence of . . . flight from persecution," 8 C.F.R. § 208.15(a), was based on a  misperception of the record.  Accordingly, we GRANT the petition for review and REMAND the case to the Board of Immigration Appeals.

_____

JOSHUA BARDAVID, Office of Stephanie Yutkin, New York, N.Y., *for Petitioner*.

ALEX GORING, Assistant Attorney General (Jeffrey S. Bucholtz, Michelle Gorden Latour, and P. Michael Truman, *on the brief*), Office of Immigration Litigation, U.S. Department of Justice, Washington, DC, *for Respondent*.

_____

CALABRESI, *Circuit Judge*:

Petitioners Jin Yi Liao and Xiao Zhi Wu, mother and son, petition from the June 25, 2007 order of the Board of Immigration Appeals ("BIA") dismissing their appeal and affirming the decision of Immigration Judge ("IJ") William Jankun, who denied their applications for asylum and withholding of removal.  Petitioner Liao applied for asylum based on political persecution, alleging that she left China when family planning authorities threatened forcibly to abort her pregnancy.  She first fled to the Dominican Republic, and there gave birth to her son, Xiao Zhi Wu, who is applying for derivative status.[2]  Five months later she settled in the United States,

_____

[2] The references herein are to the lead Petitioner, Jin Yi Liao, as Xiao Zhi Wu is applying for derivative status based on the application of his mother.

where she has had two more children. The BIA affirmed the IJ's decision, which, based on Petitioner's two month "Residencia" visa, had found that Petitioner was "firmly resettled" in the Dominican Republic, and was therefore ineligible for asylum. *See* 8 U.S.C. § 1158(b)(2)(A)(vi). We hold that a temporary visa of such a short term, without more, cannot establish that an applicant has, under the "totality of the circumstances" test employed by our Circuit, been "firmly resettled" in a third country. *See* 8 C.F.R. § 208.15. Moreover, we find that the BIA's decision that Petitioner did not qualify for the exception to firm resettlement for applicants whose entry into another country was a "necessary consequence of . . . flight from persecution," 8 C.F.R. § 208.15(a), was based on a misperception of the record. We therefore grant the petition for review and remand the case to the BIA.

**BACKGROUND**

**I.      Liao's Claim of Persecution**

Because the agency has not questioned Petitioner's credibility, we take the facts she has asserted to be true. *See Yan Chen v. Gonzales*, 417 F.3d 268, 271-72 (2d Cir. 2005) (holding that, where there is no adverse credibility determination in the decision being reviewed, we will assume that the petitioner is credible). Liao is a citizen and native of China who fled from her home country to avoid forcible abortion. In January 1992, Liao discovered that she was pregnant. Since she was not legally married to the baby's father, her current husband DeZhong Wu, the Chinese authorities considered her pregnancy illegal. Consequently, when Liao was "somewhat noticeably pregnant," several government officers came to her home one evening and, suspecting she was pregnant, educated her about the importance of complying with the birth control policy. These officials told her that she "was not allowed to give birth to a child because

[she] did not have a Birth Permit from the government," and that "if [she] was actually pregnant, [she] must undergo [an] abortion." She then received letters from the Chinese government telling her to have an abortion or "face consequences." Fearing a forcible abortion, Liao and DeZhong Wu made arrangements for Liao to flee from China. They contracted with a "snakehead" to get a visa and to transport Liao to the Dominican Republic, where she arrived in May 1992.

Liao was in the Dominican Republic for a total of ten months. During that time, she neither obtained a job nor learned Spanish. When she first arrived, she spoke with her brother in China on the phone, and "he told [her] that the officials from the Street Committee were looking for [her]" and that "he was detained for about one week and beaten because he refused to cooperate with the officials." Liao's brother told her "not to go home." Approximately five months after leaving China, on October 15, 1992, Liao gave birth to her son Xiao Zhi Wu, who, having been born there, is a native and citizen of the Dominican Republic. After giving birth, Liao stayed in the Dominican Republic another five months, then left with her son and entered the United States without inspection or valid entry documents on or about March 18, 1993. Since her arrival in the United States, while her immigration proceedings have been pending, Liao and De Zhong Wu, to whom she is now formally married, have had two U.S. citizen children, currently teenagers.

## II. Immigration Proceedings

In June 1993, Liao timely filed an application for asylum and withholding of removal, alleging that she had escaped forced abortion by Chinese family planning authorities and feared persecution upon return. An abbreviated version of her proceedings before immigration

authorities is as follows.

A.    *Liao's First Proceeding*

Liao appeared for a merits hearing before IJ Jankun in support of her application for asylum and withholding in September 1999. During this hearing, the IJ declined to hear testimony with respect to Liao's claim for asylum based on her alleged resistance to China's coercive birth control practices because Liao had already presented testimony on that issue in her husband's asylum case. IJ Sandy Hom had found Liao's testimony in support of her husband's application for asylum inconsistent with her husband's testimony, and therefore determined that his claims were not credible. IJ Jankun held that IJ Hom's decision was binding on Liao as a matter of what IJ Jankun called *res judicata*.

One issue that had not been resolved in her husband's case, however, was that of firm resettlement in the Dominican Republic. Liao testified that she was in the Dominican Republic as a result of her flight from China. In his order, IJ Jankun noted that Liao obtained a resident visa from the Dominican Republic, which was evidenced by a stamp in her passport that said "Residencia." Because Liao "was given permission to enter the Dominican Republic as a resident," the IJ found that Liao was "firmly resettled" there, and hence unable to establish eligibility for asylum in the United States. Upon appeal, the BIA remanded the case to IJ Jankum after finding (1) that the IJ had erroneously applied the principle of *res judicata*, and (2) that the IJ had improperly relied on Liao's untranslated passport stamp in finding that Liao was firmly resettled.

B.    *Liao's Second Proceeding*

Upon remand to the IJ, Liao testified again in support of her application for asylum and

withholding. Although the translation of the passport stamp from the Dominican Republic stated that Liao was granted "residency" in that country, Liao's attorney maintained that the stamp was not conclusive evidence of firm resettlement because, *inter alia*, the visa expired on July 7, 1992, which was within approximately a month of her arrival in the Dominican Republic. Moreover, Liao's counsel argued that she only fled to the Dominican Republic as a desperate attempt to get a visa anywhere so she could quickly leave China to avoid an involuntary abortion, and that, as a result, she should not have been considered "firmly resettled" there. Reaffirming his prior holding, the IJ found that "[a]fter being admitted on a resident visa," Liao was firmly resettled in the Dominican Republic and, hence, statutorily ineligible for asylum.

As to her withholding claim, the IJ concluded Liao had "not presented any testimony or background material to indicate that she would have problems with the family planning authorities if she was to return to People's Republic of China, as [Liao] readily admitted her children[,] one who is a citizen of the Dominican Republic and two who are citizens of the United States, do not have to return with her to [the] People's Republic of China." The BIA affirmed the IJ's decision, and Liao now appeals.

**DISCUSSION**

On appeal, Liao first asserts that the BIA erroneously found that she was "firmly resettled" in the Dominican Republic and therefore statutorily ineligible for asylum. She first contends that the BIA, in basing its conclusion solely on the "Residencia" visa, employed the wrong legal standard. This challenge presents us with a question of first impression for this Court—whether a temporary residence visa, without more, can constitute an "offer of permanent residence status," as required for "firm resettlement" under 8 C.F.R. § 208.15. Second, Liao

-6-

argues that even if she received an offer of permanent residence, she qualifies for an exception to the statutory bar that precludes applications for asylum for those who were resettled in other countries before coming to the United States. Liao further argues that the BIA, having erroneously found her to be permanently resettled, wrongly evaluated her case only under the more stringent withholding standard. She contends that the agency should have found her eligible for asylum.[3]

**I.      Standard of Review**

Where, as here, the BIA summarily affirms an IJ's decision with little explanation, we directly review the factual and legal findings contained in the opinion of the IJ as supplemented by the BIA. *See Yan Chen*, 417 F.3d at 271. This Court reviews the agency's factual findings under the substantial evidence standard, which requires that the IJ's findings be supported by "reasonable, substantial and probative evidence in the record." *Lin Zhong v. U.S. Dep't of Justice*, 480 F.3d 104, 116 (2d Cir. 2007) (internal quotations omitted); *Sall v. Gonzales*, 437 F.3d 229, 232 (2d Cir. 2006) (per curiam) (joining the finding of our "sister circuits that the 'substantial evidence' standard applies when reviewing findings of firm resettlement"). While this is a highly deferential standard, the Court will vacate and remand for new findings if the agency's reasoning or its fact-finding process was sufficiently flawed. *Cao He Lin v. U.S. Dep't*

---

[3] Liao also argues that the IJ violated her due process rights by failing to consider all of the evidence submitted. There is no indication, however, that the IJ or BIA failed to consider Liao's evidence. The agency is not required to "expressly parse or refute on the record each individual argument or piece of evidence offered by the petitioner." *Wei Guang Wang v. Bd. of Immigration Appeals*, 437 F.3d 270, 275 (2d Cir. 2006) (internal quotation and citation omitted). And we will generally presume that the agency "has taken into account all of the evidence before [it], unless the record compellingly suggests otherwise." *See Xiao Ji Chen v. U.S. Dep't of Justice*, 471 F.3d 315, 338 n.17 (2d Cir. 2006).

*of Justice*, 428 F.3d 391, 406 (2d Cir. 2005). In addition, we review questions of law *de novo*. *Secaida-Rosales v. INS*, 331 F.3d 297, 307 (2d Cir. 2003).

**II.      Firm Resettlement**

The Immigration and Nationality Act provides that an applicant is not eligible for asylum if he or she was "firmly resettled in another country prior to arriving in the United States." 8 U.S.C. § 1158(b)(2)(A)(vi). Pursuant to Federal Regulations, "[a]n alien is considered to be firmly resettled if, prior to arrival in the United States, he or she entered into another country, with, or while in that country, received, an offer of permanent resident status, citizenship, or some other type of permanent resettlement." 8 C.F.R. § 208.15. There are two exceptions to this rule. An applicant is not considered firmly resettled if "entry into that country was a necessary consequence of his or her flight from persecution, that he or she remained in that country only as long as was necessary to arrange onward travel, and that he or she did not establish significant ties in that country." *Id.* at § 208.15(a). Alternatively, an applicant is not considered firmly resettled despite an "offer of permanent residence" if the conditions of residence "were so substantially and consciously restricted by the authority of the country of refuge that he or she was not in fact resettled." *Id*. at § 208.15(b). Liao's claims on appeal go both to whether she received an "offer of permanent resident status," *id.* at § 208.15, and to whether she qualifies for the first of these exceptions, *id.* at § 208.15(a).

*A.      Totality of the Circumstances*

Liao argues that, because the BIA failed to employ the "totality of the circumstances" test set forth in *Sall*, 437 F.3d at 233, it applied the wrong standard in evaluating whether she received an "offer of permanent resident status" that would constitute firm resettlement. In *Sall*,

our Court clarified the "proper standards for reviewing a finding by an immigration judge ("IJ") that an asylum applicant has 'firmly resettled' in a third country before applying for asylum in the United States." *Id.* at 230. After reviewing the holdings in cases from different circuits, the Court noted that in some circuits "firm resettlement" cannot be found absent an official (i.e., governmental) offer of some kind of permanent resettlement or an "extended, undisturbed residence in a third country." *Id.* at 232 (internal quotation marks omitted). Our Court, however, decided to adopt a "totality of the alien's circumstances" test, thereby following those circuits which apply a "broader conception of 'firm resettlement.'" *Id.* (internal quotation marks omitted). In choosing to employ a "totality of the circumstances" test to determine whether there is an "offer of permanent residence" under 8 C.F.R. § 208.15, the Court first reasoned that the plain language of the regulation made clear that an official government offer was not necessary for a person to be firmly settled in another country. *Sall*, 437 F.3d at 233. Additionally, the Court stated that the purpose of the regulations, which is "to provide refuge to desperate refugees who reach our shores with nowhere else to turn," concurs with the broader and more flexible reading that grants asylum to "those applicants without alternative places of refuge abroad, regardless of whether a formal 'offer' of permanent settlement has been received." *Id.*

The IJ and BIA's conclusion that Liao was permanently resettled rested on the fact that Liao entered the country with a resident visa from the Dominican Republic.[4] Without further

---

[4] The BIA's order reads:

> The evidence reflects that the [Petitioner] was issued a resident visa for the Dominican Republic on May 7, 1992, and that she entered that country on May 8, 1992. As such, the evidence supports the Immigration Judge's conclusion that the respondent firmly resettled in the Dominican Republic prior to her arrival in the United States in 1993. . . . [C]f. *Sall v. Gonzales*, 437 F.3d 229 (2d Cir. 2006)

information, however, it is uncertain whether this visa signified that Liao could remain permanently in the country. The visa itself expired within a month of Liao's arrival in the Dominican Republic, and it is unclear from the record whether the Dominican government would have renewed her visa had Liao attempted to extend its duration. We conclude that the IJ and the BIA were required to look beyond the presence of the "Residencia" stamp in Liao's passport to determine whether under the totality of the circumstances Liao received an "offer of permanent resident status" that would constitute "firm resettlement." 8 C.F.R. § 208.15. We further hold that a temporary visa, such as this one, which expires after a short period, cannot on its own constitute substantial evidence of an "offer of permanent resident status" sufficient to establish that an applicant has been "firmly resettled" in a third country. Instead, the agency, to make its determination, must evaluate the significance of any such visa, along with other factors.[5] Accordingly, the BIA erred in finding, based solely on her temporary resident visa, that Liao was permanently resettled in the Dominican Republic.

B.      *Exception to Firm Resettlement Under 8 C.F.R. § 208.15(a)*

In addition, we find that the BIA's decision that Liao did not qualify for one of the exceptions listed in 8 C.F.R. § 208.15 was based on a misperception of the record and thus requires remand. *See Tian-Yong Chen v. INS*, 359 F.3d 121, 127 (2d Cir. 2004) (stating that

---

("totality of the circumstances" test applies to question whether an asylum applicant has firmly resettled in a third country where the evidence does not reflect that the applicant received an actual offer of permanent resident status in that country.)

[5] Prior to *Sall*, we had held that a tourist visa and a business visa did not constitute offers of permanent residency that could give rise to "firm resettlement." *See respectively Nikolla Mushka v. INS*, 149 Fed. App'x 28 (2d Cir. 2005) (tourist visa); *Leong Leun Do v. Esperdy*, 309 F.2d 467, 472 (2d Cir. 1962) (business visa).

remand may be appropriate "where the agency's determination is based on an inaccurate perception of the record, omitting potentially significant facts"). That is, even if Liao had received an "offer of permanent resettlement" under the "totality of the circumstances" test described above, the BIA erred in finding that Liao "failed to submit or identify any evidence which would rebut the Immigration Judge's finding that she firmly resettled in another country before coming to the United States." Instead, the record reflects that Liao has proffered significant evidence related to the 8 C.F.R. § 208.15(a) exception. This exception provides that even if an applicant has received an "offer of permanent resettlement" in a third country, she will not be considered "firmly resettled" if she can demonstrate (1) that her entry into that country was a necessary consequence of her flight from persecution, (2) that she remained in the country only as long as necessary to arrange onward travel, and (3) that she did not establish significant ties in that country. 8 C.F.R. § 208.15(a).

Liao's asylum application and her hearing testimony explain that she went to the Dominican Republic because she feared forced abortion and that the Dominican Republic was the country to which she could secure immediate travel. Second, Liao's testimony makes clear that she stayed in the Dominican Republic only long enough to arrange onward travel. In her case, travel was delayed by her pregnancy, but she left the country five months after giving birth to her son. The Government contends that these five months are an unreasonable wait time and that "Petitioners have offered no explanation, much less identified record evidence why it was necessary for Liao to remain in the Dominican Republic for so many months before and after giving birth if she was not resettled there." Respondent's Br. at 26. Liao presented evidence, however, that she needed to leave China immediately because the family planning authorities

-11-

were pursuing her, and even beat her brother. And, it seems to us absurd that, having gotten into the Dominican Republic, she should have, well along in her pregnancy, tried to enter the United States without documents. It is equally self evident that it takes several months after giving birth before one is able to undertake international travel, even apart from the risks of such travel to a newborn. Lastly, Liao established no significant ties in the country during her ten months there. For example, she neither learned the language nor obtained employment.

In sum, the BIA both misconstrued the record by failing to consider the above relevant facts and provided us with no substantive basis for its conclusion. *See Wei Guang Wang v. BIA,* 437 F.3d 270, 275 (2d Cir. 2006) ("[T]he BIA should provide us with more than 'cursory, summary or conclusory statements,' so that we are able to discern its reasons for declining to afford relief to a petitioner." (quoting *Anderson v. McElroy*, 953 F.2d 803, 806 (2d Cir. 1992)). "[T]he BIA's denial of relief can be affirmed only on the basis articulated in the decision," and here that basis was sufficiently flawed as to require remand. *Anderson,* 953 F.2d 803 at 806.

**III.    Remand to the BIA**

Given the identified errors in the BIA's decision, we VACATE the BIA's order of deportation, GRANT the petition for review, and REMAND the case to the BIA for reconsideration consistent with this opinion. We note, in passing, that as there is no longer a final order against Petitioners, they may now also file a successive petition for relief upon demonstrating *either* changed personal circumstances or country conditions that materially affect their eligibility for asylum. *See Yuen Jin v. Mukasey*, 538 F.3d 143, 152-53, 156 (2d Cir. 2008) (adopting the BIA's ruling that "an alien may file a successive asylum application based on changed personal circumstances or changed country conditions, pursuant to 8 U.S.C. §

-12-

1158(a)(2)(D)," as long as there is no final order of removal, or within the 90-day deadline for a motion to reopen, but that "an alien under a final removal order must file a successive asylum application in conjunction with a motion to reopen and in accordance with those procedural requirements").